**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Defendant, Allianz Life Insurance Company of North America

By: _____
            Steven P. Del Mauro, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NORMA CANDICE EDELBAUM, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. 08-cv-02505 |
| | : |
| vs. | : |
| | : |
| ALLIANZ LIFE INSURANCE | : |
| COMPANY OF NORTH AMERICA | : |
| | : |
| Defendant. | : |
| | : |

**CIVIL ACTION –NOTICE OF MOTION TO DISMISS THE COMPLAINT WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE UNITED STATES DISTRICT COURT, DISTRICT OF NEW JERSEY**

TO:    David A. Zelman, Esq.
        Law Office of David A. Zelman
        612 Eastern Parkway
        Brooklyn, New York 11225
        Attorneys for Plaintiff, Norma Candice Edelbaum

**PLEASE TAKE NOTICE** that at a date and time to be determined by the Court, the

undersigned attorneys for defendant, Allianz Life Insurance Company of North America

("Allianz"), shall appear before the Honorable George P. Daniels, U.S.D.J. at the United States

District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, for an order dismissing the Complaint of Norma Candice Edelbaum without prejudice or, in the alternative, transferring this action to the District of New Jersey in accordance with 28 U.S.C. § 1404(a).

**PLEASE TAKE FURTHER NOTICE** that in support of the within motion to dismiss or transfer, Allianz shall rely upon the Legal Memorandum, and Certification of Counsel together with all pleadings and proceedings to date.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to FED. R. CIV. P. 78, oral argument is requested if opposition to the within motion is filed by or on behalf of plaintiff, Norma Candice Edelbaum.

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for defendant, Allianz Life Insurance
Company of North America

By: _____
Steven P. Del Mauro, Esq.

Dated:

1081168_1 DOC

MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Defendant, Allianz Life Insurance Company of North America

By: _____
           Steven P. Del Mauro, Esq.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| NORMA CANDICE EDELBAUM, | : | |
| | : | CIVIL ACTION NO. 08-cv-02505 |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ALLIANZ LIFE INSURANCE | : | |
| COMPANY OF NORTH AMERICA | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## CIVIL ACTION – CERTIFICATION OF COUNSEL

---

I, **STEVEN P. DEL MAURO, ESQ.**, of full age, being duly sworn according to law and upon my oath depose and say:

1.      I am an attorney-at-law of the State of New Jersey and am a member of the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant, Allianz Life Insurance Company of North America ("Allianz"), in connection with the above matter.  As such, I am fully familiar with the facts and circumstances set forth herein, and have been authorized to submit this Certification in support of Allianz's motion to dismiss the Complaint of

Norma Candice Edelbaum ("Edelbaum") in this matter, without prejudice, or, in the alternative, transfer this matter to the District of New Jersey.

**The Application For Term Life Insurance**

2.    Elelbaum commenced this action seeking payment of death benefits pursuant to a policy of life insurance issued by Allianz on the life of Austin Bleich ("Decedent") in the amount of $1,300,000.00.

3.    On September 30, 2005, the Decedent executed an Application, Part I, seeking the issuance of a policy of life insurance bearing policy no. 60012691. The Application, Part I, seeking the issuance of a policy of life insurance is fully incorporated herein by reference as if set forth at length. A true and correct copy of Part I of the Application executed by Decedent is attached hereto as Exhibit A.

4.    In executing the Application, Part I, the Decedent provided the following answers to the questions contained therein, to wit:

> 9.    **Medical History**
>
> > 1.    Has the proposed insured received treatment or advice from a member of the medical profession for heart disease, kidney or liver disease, diabetes, stroke, dizziness, nervous or mental disorder, cancer or tumor?    **NO**
> >
> > *       *       *
> >
> > 3.    Within the past 12 months, has the proposed insured been hospitalized or been advised by a member of the medical profession that he/she needs hospitalization, a surgical procedure or diagnostic test for any reason (other than normal pregnancy or well-baby care)?    **NO**
> >
> > If "YES" to questions number 2 or 3, provide details below.

5.    In executing the Application, Part I, the Decedent expressly represented, acknowledged and agreed:

**Agreement and permission**

**I understand that the complete application consists of my written answers to the questions in this application and the answers to the questions in the subsequent phone application. Further, I agree to answer the questions in the subsequent phone application completely and truthfully. I am aware that the Company will rely on these answers and that if my answers are not complete and true, my policy may not be valid. I will review my phone application and notify the Company of any discrepancies....** I agree that any insurance approved by the Company for issuance as a result of this application shall be considered in force only when, during my lifetime and continued insurability, a policy is issued by the Company, said policy is received and accepted by me, and the first premium has been paid...

6.      Decedent executed Part I of the application for life insurance in the State of New Jersey and represented that he was a New Jersey resident residing at 15 Kensington Court, Tenafly, New Jersey 07670 as his residence.

7.      On October 17, 2005, Decedent underwent a paramedical examination and executed Part II to the application for life insurance, Answers to Medical Examiner.  The examination and the execution of Part II took place at 1 West Ridgewood Avenue, Paramus, New Jersey.  The Application, Part II Answers to Medical Examiner is fully incorporated herein by reference as though set forth at length.  True and correct copies of Part II of the application for life insurance and the paramedical exam questionnaire contained in Allianz's claim file are attached hereto as Exhibit B.

8.      In executing the Application, Part II, Answers to Medical Examiner, the Decedent provided the following answers to the questions contained therein, to wit:

Have you ever had or been told you had or consulted a physician or practitioner for:

*        *        *

3

G.    Ulcers, colitis, jauntis, hernia, any disease of the gastrointestinal system including the stomach, intestines, liver, gallbladder, pancreas or esophagus?    **YES**

\*    \*    \*

L.    Cancer, tumor or growth of any kind?    **YES**

\*    \*    \*

Have you ever had or been advised to have any surgical operation, treatment or test; are you using any medication or drugs?    **NO**

\*    \*    \*

Have you ever had an X-ray, electrocardiogram, or other medical test?    **YES**

Have you within the last ten years:

A.    Had any illness, disease, or injury that is not included in your other answers?    **NO**

B.    Consulted or been examined or treated by any physician or practitioner not named in connection with your other answers?    **NO**

9.    Having answered "YES" to the questions noted above, Decedent represented that he had a "hernia" about four years and "Basel Cell" cancer.

10.    Through and by virtue of the execution of the Application, Part II, Answers to Medical Examiner, Decedent represented, acknowledged and agreed:

I hereby declare that, to the best of my knowledge and belief, the information given above is correctly recorded, complete and true, and I agree that the Company believing it to be true, shall rely and act upon it accordingly.

11.    In addition, the paramedical examination during which Decedent executed Part II of the Application for Life Insurance took place at 1 West Ridgewood Avenue, Paramus, New Jersey.

4

12.     On October 19, 2005, the Decedent completed the telephone application part of the Application, which the Decedent executed on November 22, 2005, seeking the issuance of a policy of life insurance bearing policy no. 60012691.  A copy of the telephone part of the application is attached hereto as Exhibit C.

13.     In executing the telephone application, Decedent provided the following answers to the questions contained therein, to wit:

1.      Do you have a personal physician?                    **YES**

1a      If "yes":  Name, address and phone number of your personal physician:  **Dr. Leonard Raifman -1000 Park Avenue, New York, NY 10028 – phone #212-734-8821**

1b      Date of last visit:  **9 months ago**

1c      Please provide reason consulted:  **annual checkup**

1d      Was any treatment, including medications, given?   **NONE**

1e      What is your current status of this visit:  (i.e. all test results, normal, complete recovery, still on meds)?   **Normal results**

1f      Was any referral made?                              **NONE**

1g      Are any follow-up visits required?                  **annually**

                        *       *       *

3       WITHIN THE PAST FIVE YEARS HAVE YOU:

3a      Consulted, or had any checkup, or physical consultation by any other medical professional (including chiropractors, homeopaths, osteopaths, psychologists, or ophthalmologists?   **YES**

3b      Had a diagnostic test included but not limited to imaging, EKG or laboratory tests?                 **NO**

3c      Been a patient in a hospital, clinic, or sanitarium?   **NO**

3d      Had or been advised to have a surgical operation?   **NO**

*     *     *

4.    HAVE YOU RECEIVED MEDICAL ADVICE OR HAS TREATMENT BEEN RECOMMENDED OR RECEIVED FOR:

*     *     *

4ab    Any disease or abnormality of the pancreas?    **NO**

*     *     *

4au    Any disease or abnormality of the skin?    **YES**

4av    Any cancer or tumor?    **NO**

*     *     *

6.    In the past ten years, have you been treated or diagnosed with any other medical conditions not previously disclosed?  **NO**

*     *     *

14.    Having answered "Yes" to question 3a, the Decedent represented that he consulted and was treated by a physician two years ago for a colonoscopy, with good results and that four years ago the Decedent underwent hernia surgery. In addition, the Decedent represented that he was diagnosed with Basil Cell Carcinoma which was removed from his back, with good results.

15.    Through and by virtue of the execution of the telephone application, the Decedent represented, acknowledged and agreed to abide by the following obligations and conditions:

> Please review the information you provided us in this Telephone Application very carefully. If any of the information is not correct, please advise the Company immediately. If you do not advise the Company of any incorrect information within the 30 day right to return period stated on the front page of your policy, the accuracy of the information you provided will be deemed affirmed by you.
>
> I understand that the complete application consists of my answers to the questions in this Telephone Application and my written

6

answers to the questions in the initial application. I am aware that
the company will rely on these answers and that if my answers are
not complete and true, pursuant to the Contestability provision of
the policy to which this application is attached, the policy may not
be valid.

16.    On November 22, 2005, the Decedent executed the Amendment to Application

seeking issuance of a policy of life insurance bearing policy no. 60012691. The Amendment to

Application is attached hereto as Exhibit D.

17.    Through and by virtue of the execution of the amendment to application, the

Decedent represented, acknowledged and agreed:

                              *        *        *

Since the date of the original application of this policy, the
proposed insured(s) and any family members proposed for
insurance in the application: (a) have not applied for insurance
which was declined, postponed or modified; and (b) have no
application for insurance pending with another company; and (c)
have not suffered an illness or injury; and (d) have not consulted or
been examined by a physician or practitioner; and (e) have not
changed occupations;

                              *        *        *

**I AGREE** that any person who includes any false or misleading
information on an application for an insurance policy is subject to
criminal and civil penalties.

## Allianz Issues a Policy of Term Life Insurance

18.    On the basis of the statements and representations contained within the insurance

application, and in reliance upon the Decedent's complete candor, honesty and openness in

disclosing information in response to the questions presented on the application, Allianz

approved the issuance of a policy of life insurance bearing policy #60012691. Allianz issued the

above-referenced policy of life insurance bearing policy #60012691. A specimen copy of the

Policy is attached hereto as Exhibit E.

19.     Based upon Decedent's representation that he was a New Jersey resident, and on the basis that the application was completed and executed in the State of New Jersey, Allianz issued the policy pursuant to, in accordance with and governed by the laws of the State of New Jersey.

**Decedent's Death and Edelbaum's Claim Under The Policy**

20.     On September 21, 2007, and within the contestable period of the policy of life insurance, the Decedent expired due to pancreatic cancer.

21.     October 7, 2007, Edelbaum executed a Claimant's Statement seeking payment of the death benefit under the policy of life insurance as a consequence of the Decedent's death. A true and correct copy of the October 7, 2007, Claimant's Statement is attached hereto as Exhibit F.

22.     During an investigation of the death claim which ensued, Allianz discovered, for the first time, that the representations and statements made by the Decedent in response to the questions present on the insurance applications were materially false; that the Decedent knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed to accurately, honestly and truthfully answer and disclose material information in response to the questions present on the insurance applications, which, if disclosed on the insurance applications and/or prior to the delivery, acceptance and payment of the required premium for the policy of life insurance, would have caused the non-issuance of the policy of life insurance as applied for by Allianz.

23.     Specifically, by way of illustration only, the Decedent knowingly and intentionally made material misstatements of fact, failed; refused and omitted to disclose material facts; and otherwise failed to disclose to Allianz on the insurance applications, and

during the underwriting thereof, that:

    a.      The Decedent was examined, consulted and treated by Leonard I. Raifman, M.D., who recommended that the Decedent undergo CAT scan of the abdomen and pelvis.

    b.      On November 7, 2005, the Decedent underwent a CAT scan of the abdomen and pelvis which was highly suspicious for pancreatic mass.

    c.      The Decedent was referred to Franklin E. Kasmin, M.D., and on November 14, 2005, the Decedent underwent endoscopic ultrasound at the Beth Israel Medical Center, with fine needle aspiration of the pancreas.

    d.      On November 15, 2005, Dr. Kasmin corresponded with Dr. Raifman at which time he advised:

> Mr. Bleich underwent an endoscopic ultrasound at Beth Israel Medical Center on November 14, 2005. The neck of the pancreas was diffusely hypo echoic, consistent with a mass. The more proximal pancreatic duct was markedly dilated and the tissue in the body and tail was diffusely hypo echoic and abnormal. Multiple biopsies were taken of the region of the abnormality in the neck of the gland. Early evaluation by the cytopathology technician demonstrated much debris was in the sample, but, hopefully, we will have a more definitive answer after from the biopsies after they are reviewed by the cytopathologist.

> Mr. Bleich appears to have an ominous lesion in the neck of the gland, and, hopefully, today's biopsies will be useful. If not, another attempt at biopsy using ERCP and brush cytology across the pancreatic duct may be of use…

    e.      On November 18, 2005, the Decedent underwent a CAT scan of the abdomen which revealed, "Mass at the pancreatic body and neck with vascular encasement as above. Findings are most consistent with neoplasm, presumably pancreatic endocarcinoma.

24.      On January 31, 2008, Allianz formally declared the rescission, *ab initio*, of the

policy of life insurance and tendered a check representing the return of premiums theretofore paid under the policy of life insurance. Attached hereto is a true and correct copy of Allianz's July 31, 2008, correspondence as Exhibit G.

**Allianz Commences Its Complaint For Rescission in The United States District Court For The District of New Jersey**

25.    On February 5, 2008, within days of its issuing its correspondence rescinding the policy and tendering a check representing a return of premiums theretofore paid under the Policy, Allianz filed a complaint in the United States Court for the District of New Jersey, Civil Action No. 08-08-cv-00668, against the Estate of Austin Bleich and Candice Edelbaum Bleich asserting causes of action and claims for relief related to material misrepresentations made by Austin Bleich ("Decedent"), in connection with the application for a policy of term life insurance delivered to the Decedent on November 22, 2005, bearing policy number 60012691. A true and correct copy of Allianz's Complaint filed in the District of New Jersey is attached hereto as Exhibit H.

26.    In its complaint, Allianz alleged five causes of actions related to Decedent's failure to fully disclose his medical condition under the terms of the Application. Specially Count I, alleges a cause of action for legal fraud; Count II, states a cause of action for equitable fraud; Count III, sets forth a cause of action based upon mistake of fact; Count IV, seeks to specifically enforce the terms of the policy which require Decedent to truthfully respond to all questions contained within the application as a condition for Decedent to the effectiveness of the policy; and, finally, Count V, states a claim for rescission of the policy based upon material misrepresentations in failing to disclose the changes in his health.

**Edelbaum Files a duplicative Cause of Action in The United States District Court For the Southern District of New York**

27.    Subsequent to Allianz's filing of its Complaint in the District of New Jersey,

Edelbaum, filed this Complaint in the Southern District of New York on March 12, 2008,

seeking death benefits on the Policy which is the subject of Allianz's Complaint for rescission

previously filed in the District of New Jersey. A true and correct copy of Edelbaum's Complaint

in this matter is attached hereto as Exhibit I. The complaint alleges:

5.    Effective November 15, 2005, ALLIANZ issued DECEDENT a term life insurance agreement with a specified amount of coverage as $1,300,000.00. (Hereinafter 'Specified Amount').

6.    The Insurance Agreement was delivered to DECEDENT on November 22, 2005 with a policy effective date of November 15, 2005 with full coverage in effect until the termination date of November 15, 2036.

7.    EDELBAUM, the spouse of DECEDENT, was and is the named beneficiary under the Insurance Agreement.

8.    On or about September 21, 2007, DECEDENT died.

9.    On September 21, 2007, the Insurance Agreement was in full force and effect and all premiums had been paid.

10.    EDELBAUM has demanded and continues to demand that ALLIANZ honor the Insurance Agreement and pay the specified amount due to her under the terms of the Insurance Agreement, however, ALLIANZ has refused said payment.

11.    [sic] DECEDENT and EDELBAUM have performed all the obligations required of them under the terms and conditions of the Insurance Agreement.

28.    After receiving copy of Edelbaum's complaint, I wrote to Edelbaum's counsel,

Mr. David Zelman, requesting that his office voluntarily dismiss this action, without prejudice,

and assert the causes of action and claims for relief against Allianz by way of counterclaim in the

earlier field action in the District of New Jersey. A true and correct copy of my March 31, 2008, correspondence to Mr. Zelman is attached hereto as Exhibit J.

29.    Mr. Zelman has neither withdrawn his complaint nor provided any explanation as to why this action should not properly be asserted by way of counterclaim in the District of New Jersey. This action and Allianz's Complaint in the District of New Jersey involve the same policy of term life insurance issued to the Decedent and the same set of operative facts concerning the application for and issuance of the Policy. Moreover, if Allianz is unsuccessful in its action in the District of New Jersey, the Policy would be in full force and effect, and Allianz would be required to pay Edelbaum the death benefits she seeks in this separate, duplicative and later-filed action in the Southern District of New York.

30.    Allianz's complaint in the District of New Jersey seeks relief not only against Edelbaum, but also against the Estate of the Decedent.

31.    If this action is not dismissed or transferred to the District of New Jersey where Allianz filed the first complaint concerning the enforceability of the policy, then Allianz will be forced to assert causes of action in this Court by way counterclaim which are entirely identical and duplicative of its complaint filed in the District of New Jersey.

32.    In addition, Allianz will be forced to file a third-party complaint in this District Court alleging identical causes of action and claims for relief against the Estate which again duplicate the claims set forth in Allianz's February 5, 2008, complaint in the District of New Jersey.

33.    Based on the above facts and circumstances, Allianz submits that Edelbaum's Complaint should be dismissed, without prejudice, as the causes of action asserted therein should properly be asserted as a counterclaim to the Complaint filed in the District of New Jersey. In

the alternative, the Court should transfer this action to the District of New Jersey for further

proceedings.

34.    I certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for defendant, Allianz Life Insurance
Company of North America

By:_____
        Steven P. Del Mauro, Esq.

Dated: May **20** , 2008

1083529_3 DOC

# EXHIBIT A



# 10 Year/20 Year Term
# Life Insurance Policies

## New Jersey Life Application

**Product requirements:**

- ☐ NB5019 – Special requests, see the Agent's Report
- ☑ NJ-NB2240 – AIDS consent form (return signed form to Home Office with application)
- ☑ NB3033 – Replacement form if life insurance or annuities are being replaced or if other life insurance or annuities are in force (return signed form to Home Office with application)
    - If a replacement is involved, copies of all sales material used during the sales presentation must be left with the applicant and submitted to the Home Office with application. Sales material is any individualized material, including illustrations. This does not include company approved sales aids of a generally descriptive nature.
- ☑ NB3046 – HIPAA Health Information (return signed form to Home Office with application)

**Required forms not available in application packet:**

- ☑ Statement of Understanding (sign and return entire form to Home Office with application)[1]
- ☐ S2056 – <u>if transfer is involved</u>[1]

**Additional information:**

- Underwriting guidelines vary by product. Refer to the M3405 on our Web site.
- For questions contact the FASTeam at 800/950-7372 (press 1, then 2 for Sales Support/Life)

[1]**All forms are available on the Web site at www.accessallianz.com or call the Supply Department at 800/358-8585**

## IMPORTANT: Remove all carbonless forms from back of packet before completing application.

Allianz Life Insurance Company
of North America

PO Box 59060
Minneapolis, MN 55459-0060

<u>Overnight Address:</u>
5701 Golden Hills Drive
Minneapolis, MN 55416-1297

www.accessallianz.com

NJ-Term  (12/2004)

For agent use only

**Allianz ⑪**

Allianz Life Insurance Company
of North America

P.O. Box 59060
Minneapolis, MN 55459-0060



☐ New application

☐ Existing policy, change for policy no ☐☐☐☐☐☐☐☐☐☐☐

OCT 18 2008

**EDC**

## 1. Insured information

### Proposed insured

First
`A U S T I N`

Middle

Last
`B L E I C H`

Social Security number
`0 6 4 - 3 2 - 6 6 2 8`

Gender
☑ Male  ☐ Female

Residence address (street address required)
`15 KENSINGTON CT`

City
`TENAFLY`

State
`NJ`

Zip code
`07670 -`

Optional mailing address

City

State

Zip code
☐☐☐☐☐ - ☐☐☐☐

Driver's license number

State of issue
`NY`

Home phone number
`(201) - 569 - 5970`

Business phone number
`(252) - 065 - 4550`

Best time to call
`9:6`  ☐ a.m. ☑ p.m.

Date of birth (mm/dd/yyyy)
`02/01/1945`

Place of birth (state/country)
`NEW YORK USA`

☐ Home
☑ Business

☑ No tobacco/nicotine use in the past 12 months   ☐ Tobacco/nicotine use in past 12 months

## 2. Occupation/Financial information

### Proposed insured

Employer
`NEW MILLENNIUM FINANCIAL CORP`

Job title or duties
`PRES`

Income
$ `100,000.00`  ☐ Hourly ☐ Monthly ☑ Annually

Net worth (assets – liabilities)
$ `1,500,000.00`

Currently working full time? (minimum 30 hours per week)
☑ Yes ☐ No

Length of current employment
`9` Years ☐☐ Months

## 3. Plans of insurance (Optional benefits are provided by rider.)

Specified (face) amount $ `1,3 0 0, 0 0 0 . 0 0`

☑ Term Life Insurance Policy   ☑ 10 year  ☐ 20 year

Optional benefits available:
☐ Waiver of Premium Rider
☐ Other

Page 1 of 6

NJ-T1

Return to Home Office



# EXHIBIT B

MAY 29 '02 13:15 FR EMSI ATLANTA NORTH 4046333222 TO 15162950733 P.02/04

**MAIL COMPLETED EXAM AS DIRECTED TO ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

Corporate Office:,                                            Individual Division
1750 Hennepin Avenue South                    or            P.O. Box 600
Minneapolis, MN 55403-2195                                  Dallas, TX 75221

**MEDICAL EXAMINER'S REPORT - NOT PART OF THE APPLICATION**
This examination should be made in private - If 3rd person present, give details in space below.

| | |
|---|---|
| A. What is the name of the agent as given by the person examined? | 24. Blood Pressure (If original systolic reading is over 145 or the diastolic is over 90, take a second reading at the end of examination.) |
| B. If known, state agency with which agent is connected. | |
| C. How well do you know person examined? FIRST TIME TODAY | |

|  | 1st Reading | 2nd Reading |
|---|---|---|
| A. Systolic | 124 mm. | mm. |
| B. Diastolic | 76 mm. | mm. |

5. Are you related to person examined, or the applicant (if a different person), or the agent? (If yes, give details below.) Yes ☐ No ☐

C. Pulse 70 At ___ ___ Test ___ 5 Minutes Later

Measurements
A. Height (without shoes) ___ ft. ___ in. Did you measure? ☑ ☐
B. Weight (clothed) 190 lbs. Did you weigh? ☑ ☐

1. Rate 70
2. Irregularities 0

25. Cardiac Examination
(Examine heart before and after exercise unless contraindicated.)

IF THE ANSWER TO ANY OF QUESTIONS 20 to 28, INCLUSIVE IS "YES," GIVE FULL DETAILS IN THE SPACE PROVIDED AT THE BOTTOM OF THIS FORM.

| | Yes | No |
|---|---|---|
| A. Is there any arrhythmia? If yes, please describe | ☐ | ☑ |
| B. Is there enlargement? | ☐ | ☑ |
| C. Is a gallop present? | ☐ | ☑ |
| D. Is a murmur present? | ☐ | ☑ |

Do you find any evidence of past or present disease of:
| | Yes | No |
|---|---|---|
| A. Brain or Nervous System? (include reflexes, gait, paralysis) | ☐ | ☑ |
| B. Lungs or other Respiratory Organs? | ☐ | ☑ |
| C. Stomach or other Abdominal Organs? | ☐ | ☑ |
| D. Genito-Urinary Organs? (include prostate, hernias and scars) | ☐ | ☑ |
| E. Ears, Eyes, Nose, or Throat? (If hearing or vision markedly impaired, include degree and correction.) | ☐ | ☑ |
| F. Bones, Glands, or Skin? | ☐ | ☑ |
| G. The Cardiovascular System including blood vessels? | ☐ | ☑ |
| H. Any other part of the body? | ☐ | ☑ |
| Is there any deformity, lameness, or loss of limb? | ☐ | ☑ |
| Does person appear older than indicated by date of birth? | ☐ | ☑ |
| Does person appear unhealthy? | ☐ | ☑ |
| Do you know anything not already stated about the Proposed Insured, which may have an unfavorable effect on his or her health? | ☐ | ☑ |

|  | Presystolic | Systolic | Diastolic |
|---|---|---|---|
| Type | | | |
| Intensity | I - II | III - IV | V - VI |
| Location | ☐ | ☐ | ☐ |
| Character | | | |
| Transmission | | | |

E. Is a cardiac murmur present? ☐ ☐
If yes, please describe ___
F. Impression: ___

26. Urinalysis A. Specific Gravity
B. Amount of Albumin ___ Sugar ___
Mail specimen to the appropriate laboratory as directed by Allianz Life

**THE SPACE BELOW IS PROVIDED FOR DETAILS AND ADDITIONAL REMARKS**

NO. 

_____

I CERTIFY that I have carefully examined **Austin Bleich** of ___ EMSI
and not in the presence of any other person except as stated in space above, at 1 West Richmond Ave. Paramus, NJ 07652
17 day of October 2006, at 3:70 o'clock ☑AM ☐P.M.; that I have asked each question exactly as set forth on the other and that the answers hereto are in my handwriting, and are exactly as made to me, and that they have been signed in my presence. I have also recorded all answers on this and on the reverse side, and believe them to be complete and true.

Signature: _____ M.D. Address (Street, City, State, Zip or P.O. Box) 1 W. Redgwood Ave. Paramus, N.J. 07652

TO MEDICAL EXAMINER: Any erasures or alterations in this report should be initialed by you. Please forward this report, or any information which you prefer not

# EXHIBIT C

# GENAPP Online Report

**Name:** BLEICH, AUSTIN          **Policy:**          60012691 S!

| # | Question | Answer | D! |
|---|----------|--------|----|

Allianz Life Insurance Company of
North America

P. O. Box 59060

Minneapolis, MN 55459-0060

Phone Application for Life Insurance

Name: BLEICH, AUSTIN

Policy: 60012691

Part II - Telephone Application

| # | Question | Answer |
|---|----------|--------|
| 1 | Do you have a personal Physician? | Yes |
| 1a | If "yes": Name, address and phone number of your personal physician: | Dr Leonard Raifman-1000 Park Avenue New York NY-10028-phone #212-734-8821 |
| 1b | Date of last visit: | 9 months ago |
| 1c | Please provide reason consulted: | annual checkup |
| 1d | Was any treatment, including medications, given? | none |
|  | If "yes", please list name of medication, reason taking and name, address and phone number of physician(s) prescribing in details. |  |
| 1e | What is your current status of this visit: (i.e. all test results | normal results |

normal, complete recovery, still on meds)?

| 1f | Was any referral made? | none |

**Underwriter: UNKNOWN**    **Wednesday, October 19, 2005**    **1 of**

**Name: BLEICH, AUSTIN**    **Policy:**    **60012691 SSN: 06**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | If "yes", please provide purpose for referral, date of referral and to whom referral was made, including Physician/Facility's name, address and phone number | | |
| 1g | Are any follow-up visits required? | annually | |
| | If "yes", please provide reason and date for follow-up. | | |
| i | If "no": Date you were last seen by a medical professional: | | |
| ii | Please provide reason for this visit: | | |
| iii | Was any treatment given or medication prescribed? | | |
| | If "yes": please list name of medication, reason taking and name, address & phone number of Physician(s) prescribing in details. | | |
| iv | Any residual problems or ongoing treatment? | | |
| | Please provide details including the symptoms and treatment prescribed. | | |
| v | Please provide name, address, and phone number of physician/facility where seen: | | |

2. Please Provide:
2a. Your height in feet and inches:          6 foot 2 inches

2b. Your weight in pounds:                   188 lbs.


3    WITHIN THE PAST FIVE YEARS HAVE YOU:


3a   Consulted, or had any checkup, or        Yes
     physical consultation by any other
     medical professional (including
     chiropractors, homeopaths,
     osteopaths, psychologists, or


**Underwriter: UNKNOWN**              **Wednesday, October 19, 2005**           **2 of 15**


**Name:  BLEICH, AUSTIN**        **Policy:**            60012691  **SSN:  0643266:**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | ophthalmologists)? | | |

Q: 1: Name, address a
phone number of the r
professional seen
A: same physican as li
below

Q: Reason seen
A: colonscopy

Q: Was any treatment
recommended? (If yes
provide details)
A: none

Q: Date of last visit
A: 2 years ago

Q: Results of last visit
A: good results-no pol
removed

Q: Any follow-up sche
or planned? (If yes, wh
A: nonee

Q: 2: Name, address a
phone number of the r
professional seen
A: Dr. Mark Twern-30£
55th Street-New York
-phone 212-751-9714

Q: Reason seen
A: hernia surgery-

Q: Was any treatment
recommended? (If yes
provide details)
A: see above

Q: Date of last visit
A: 4 years ago

Q: Results of last visit
A: good results

Q: Any follow-up sche
or planned? (If yes, wt
A: none

3b    Had a diagnostic test including but No

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **3 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          **60012691 SSN:**

| # | Question | Answer | Detai |
|---|----------|--------|-------|
| | not limited to imaging, EKG or laboratory test? | | |
| 3c | Been a patient in a hospital, clinic, or sanitarium? | No | |
| 3d | Had or been advised to have a surgical operation? | No | |
| 3e | Refused medical treatment or surgery? | No | |
| 4 | HAVE YOU RECEIVED MEDICAL ADVICE OR HAS TREATMENT BEEN RECOMMENDED OR | | |

RECEIVED FOR:

| | | |
|---|---|---|
| 4a | Epilepsy or seizures? | No |
| 4b | Dizziness? | No |
| 4c | Depression or psychiatric disorder? | No |
| 4d | Muscular Dystrophy? | No |
| 4e | Parkinson's Disease? | No |
| 4f | Multiple Sclerosis? | No |
| 4g | ALS (Lou Gehrig's Disease)? | No |
| 4h | Paralysis? | No |
| 4i | Sleep Apnea? | No |
| 4j | Stroke or TIA? | No |
| 4k | Cerebral hemorrhage or aneurysm? | No |
| 4l | Mental/Nervous disorder? | No |

**Underwriter: UNKNOWN**            **Wednesday, October 19, 2005**            **4 of 15**

**Name:  BLEICH, AUSTIN**        **Policy:**            **60012691 SSN:  064326628**

| # | Question | Answer | | Details |
|---|---|---|---|---|
| 4m | Any abnormality or disease of the | No | | |

|  | brain or nervous system not previously covered? | |
|----|----|----|
| 4n | Heart attack or heart disease? | No |
| 4o | Heart murmur or arrhythmia? | No |
| 4p | Congestive heart failure? | No |
| 4q | High blood pressure? | No |
|  | Please provide highest and current readings: | |
| 4r | Peripheral vascular disease? | No |
| 4s | Anemia? | No |
| 4t | Any disease or abnormality of the heart not already covered? | No |
| 4u | Any disease or abnormality of the blood or blood vessels not already covered? | No |
| 4v | Asthma? | No |
| 4w | Emphysema or Chronic Obstructive Pulmonary Disease (COPD)? | No |
| 4x | Any disease or abnormality of the lungs or respiratory system not already covered? | No |
| 4y | Hepatitis? | No |
| 4z | Cirrhosis? | No |
| 4aa | Any other disease or abnormality of liver not already covered? | No |
| 4ab | Any disease or abnormality of the | No |

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **5 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          60012691 **SSN: 06432662**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | pancreas? | | |
| 4ac | Colitis, including Crohn's or Ulcerative Colitis? | No | |
| 4ad | Any disease or abnormality of the intestines, including rectum, not already covered? | No | |
| 4ae | Any disease or abnormality of the stomach? | No | |
| 4af | Any sexually transmitted diseases other than AIDS (Acquired Immune Deficiency Syndrome) or HIV infection? | No | |
| 4ag | Any disease or abnormality of the breasts, prostate or genital system? | No | |
| 4ah | Any disease or abnormality of the kidneys or urinary system? | No | |
| 4ai | Diabetes? | No | |
| 4aj | Any disease or abnormality of the thyroid or other glands? | No | |
| 4ak | Arthritis? | No | |
| 4al | Fibromyalgia? | No | |
| 4am | Fatigue? | No | |
| 4an | Systemic Lupus (SLE)? | No | |
| 4ao | Back trouble or surgery? | No | |
| 4ap | Osteoporosis? | No | |

4aq  Joint replacement?                    No

4ar  Any other disease or abnormality of  No

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**              **6 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**                    60012691   **SSN:**  06432662

| **#** | **Question** | **Answer** | **Details** |
|---|---|---|---|
|  | the joints, muscles, or bones? |  |  |
| 4as | Any disease or abnormality of the eyes? | No |  |
| 4at | Any disease or abnormality of the ears? | No |  |
| 4au | Any disease or abnormality of the skin? | Yes |  |

Q: Name, address and
number of doctor or do
seen for this condition
A: Dr Jeffrey Roth-580
Avenue-phone
212-752-3692-New Yoı

Q: When was this cond
diagnosed?
A: basil cell caricinoma
removed within the last
years

Q: What was the diagnı
A: see above

Q: What part of the boc
been affected?
A: from the back

Q: What treatment has
recommended? (If med

include dosage and
frequency, if surgery
include date and type c
surgery)
A: see above

Q: What is the current
status of this condition?
A: good results

Q: How often do you se
doctor or doctors for thi
condition?
A: annually

Q: When was your last
follow-up on this condit
A: about 6 months ago

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **7 of 15**

---

**Name:  BLEICH, AUSTIN**          **Policy:**          **60012691  SSN:  064**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | | | Q: What were<br>your last follow<br>A: good results |
| 4av | Any cancer or tumor? (include location in details) | No | |
| 4aw | Any physical deformity or defect? | No | |
| 4ax | Any immune deficiency disorder? | No | |
| 5 | Are you presently taking medication including prescription, nonprescription, or alternative remedies (i.e. holistic or herbal)?<br><br>If Yes, please list name of medication(s), reason taking, and name, address and phone number of Physician(s) prescribing in details. | No | |

| 6 | In the past ten years, have you been treated or diagnosed with any other medical conditions not previously disclosed? | No |

| 7 | Has any family member been diagnosed with or treated for heart disease, stroke, diabetes, cancer, kidney disease or hyperlipidemia (e.g. high cholesterol)? | Yes |

| | If "yes", please provide relationship i.e. parents, brother(s) or sister(s), their current age, if living, condition diagnosed (if cancer provide location of tumor), age at diagnoses, or if deceased, include cause of death and age at death. | father-lymphoma-passed away age 76-diagnosed age 70 |

| 8 | Do you or have you within the last 12 months required assistance or supervision, or are you limited in any way from performing any of the following daily activities: | |

| 8a | Bathing? | No |

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **8 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          **60012691 SSN:  064326628**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| 8b | Dressing? | No | |
| 8c | Toileting? | No | |
| 8d | Managing Money? | No | |
| 8e | Using the telephone? | No | |

| | | |
|---|---|---|
| 8f | Driving? | No |
| 8g | Eating? | No |
| 8h | Mobility? | No |
| 8i | Managing medication? | No |
| 9 | Do you or have you within the past 12 months required or used a: | |
| 9a | Cane? | No |
| 9b | Braces? | No |
| 9c | Walker? | No |
| 9d | Wheelchair? | No |
| 9e | Other medical appliance such as catheter? | No |
| 9f | Oxygen equipment? | No |
| 9g | Respirator? | No |
| 9h | Dialysis machine? | No |

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **9 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          **60012691 SSN:  0643266:**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| 10 | Within the past five years have you had symptoms of, been diagnosed with, or treated by a member of the medical profession for: | | |
| 10a | Incontinence? | No | |
| 10b | Imbalance or gait disturbance? | No | |
| 10c | Confusion? | No | |
| 10d | Dementia? | No | |
| 10e | Alzheimer's disease? | No | |
| 10f | Memory loss? | No | |
| 11 | Have you noticed any lump in your breast, lymph nodes, or elsewhere on your body? | No | |
| 12 | Have you ever been charged an extra premium or been declined coverage with another company? | No | |
| 13 | Within the last five years, have you received benefits from a disability or long term care insurance plan, state assistance program (Medicaid) or worker's compensation? | No | |
| 14 | Are you a US Citizen? | Yes | |
| 14a | If no, how long in the US? | | |
| 14b | If no, do you hold a greencard? | | |
| 14c | If Yes, provide greencard number: | | |
| | If No, what is your immigration status? | | |

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **10 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          60012691 SSN:  064326628

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | With what country do you hold citizenship? | | |
| | Any plans for return to your home country? | | |
| | If Yes, include in details when and for how long? | | |
| 15 | Are you a member or do you intend to become a member of the armed forces including reserves? | No | |
| | If Yes, please provide in details which branch of the military, current duties, current rank, and have you been advised of any upcoming foreign assignment. | | |
| 16 | Do you currently drive? | Yes | |
| | If No, have you ever driven? | | |
| | If No, provide reason for not driving: | | |
| | If Yes, provide reason you stopped driving: | | |
| | How are you getting to work? | | |
| 16a | Have you had any moving violations, including driving under the influence, or your driver's license suspended or revoked in the past 10 years? | Yes | |
| | If Yes, please provide the date and type of violation(s): | 2 years ago-changing lanes improperly-paid fine | |

| 17 | Have you ever flown or plan to fly as a pilot or student pilot? | No |

If "yes": please provide details including total number of hours piloted, number of hours piloted last 12 months, anticipated hours

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **11 of 15**

**Name:  BLEICH, AUSTIN**          **Policy:**          **60012691 SSN:  06432662**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | for next 12 months, type of certificate held, purpose for flying and type of plane flown? | | |
| | Do you fly outside of the US? | | |
| | Any aviation accidents? | | |
| | Has your certificate ever been suspended or revoked? (Please provide details for any "yes" answer.) | | |
| 18 | Do you intend to travel outside the US or Canada in the next two years? | No | |
| 18a | If Yes, where? | | |
| 18b | Reason for travel? | | |
| 18c | Anticipated date(s) of travel? | | |
| 19 | Have you engaged in, or intend to engage in any sports, such as: | | |
| 19a | Powered vehicle racing including | No | |

motorcycles, automobiles, motor
boats, snowmobiles, dirt bikes, and
dune buggies?

| | | |
|---|---|---|
| 19b | Ballooning? | No |
| 19c | Hang gliding? | No |
| 19d | Scuba diving? | No |
| 19e | Sky diving? | No |
| 19f | Mountain climbing? | No |
| 19g | Cave exploring? | No |

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **12 of 15**

**Name: BLEICH, AUSTIN**          **Policy:**          **60012691 SSN: 0643266**

| **#** | **Question** | **Answer** | **Details** |
|---|---|---|---|
| 19h | Rodeos? | No | |
| 19i | Bungee jumping? | No | |
| 19j | Any record events? | No | |
| 20 | Have you smoked one or more cigarettes in the past twelve months? | No | |
| | If "yes": i. how many cigarettes per day? | | |
| | ii. how long have you been smoking? | | |

| 20a | Have you used another form of tobacco/nicotine within the past 10 years? | no | |
| | If yes, please provide date last used, what form of tobacco/nicotine and how much. | | |
| 20b | Have you ever smoked cigarettes? | no | |
| | If Yes, provide date that you quit, how many years did you smoke, and approximately how many packs per day? | | |
| 21 | Do you drink alcoholic beverages? | Yes | 4 times a week-wine/beer/mi sitting-in a sitting 1 |
| | If Yes, how often do you drink alcohol? | | |
| | How much do you drink on an occasion? Include type of alcohol. | | |
| 22 | Within the past 10 years, have you used marijuana, cocaine, heroin, amphetamines, barbituates,morphine, LSD, PCP, or any other hallucinogenic or narcotic drug or controlled substance? | No | |

**Underwriter: UNKNOWN**                    **Wednesday, October 19, 2005**                    **13 of 15**

**Name:  BLEICH, AUSTIN**           **Policy:**           **60012691 SSN:  06432662**

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | If Yes, please provide details, date last used, what was used, and how often. | | |
| 23 | Within the past ten years, have you been advised to seek or had treatment for alcohol use or drug dependency? | No | |

If Yes, provide name, address, and
phone number of physician/facility
where seen, dates seen, and type of
treatment. If for alcohol
treatment, provide date of last
drink.

24    Have you ever been convicted of a     No
      crime?

      If Yes, provide date(s), what were
      you convicted of and provide the
      name of the county where convicted.

25    Are you currently on probation?     No

      Please review the information you
      provided us in this Telephone
      Application very carefully. If any
      of the information is not correct,
      please advise the company
      immediately. If you do not advise
      the company of any incorrect
      information within the 30 day right
      to return period stated on the front
      page of your policy, the accuracy of
      the information you provided us will
      be deemed affirmed by you.

      I understand that the complete
      application consists of my answers
      to the questions in this telephone
      application and my written answers
      to the questions in the initial
      application. I am aware that the
      Company will rely on these answers
      and that if my answers are not
      complete and true, pursuant to the

**Underwriter: UNKNOWN**          **Wednesday, October 19, 2005**          **14 of 15**

60012691

Name:   BLEICH, AUSTIN                          Policy:   60012691          SSN:   084326628

| # | Question | Answer | Details |
|---|----------|--------|---------|
| | Contestability provision of the policy to which this application is attached, my policy may not be valid | | |

Proposed Insured's Signature

Date

Elapsed Time  981 seconds

# EXHIBIT D

**ALLIANZ  LIFE INSURANCE COMPANY OF NORTH AMERICA**
BOX 59060
MINNEAPOLIS, MN  55459-0060

## AMENDMENT TO APPLICATION

POLICY # 60012691                ON: Austin Bleich

Allianz Life Insurance Company of North America is hereby authorized to amend my application for this policy.  This amendment is to form a part of said application and a copy attached to the policy so that this policy is issued with the understanding that:

- The Specified Face Amount issued is $1,300,000.00.
- The monthly premium due is $578.95.

Since the date of the original application of this policy, the proposed insured(s) and any family members proposed for insurance in the application:  (a) have not applied for insurance which was declined, postponed, or modified; and (b) have no application for insurance pending with another company; and (c) have not suffered an illness or an injury; and (d) have not consulted or been examined by a physician or practitioner; and (e) have not changed occupations; EXCEPT :

I AGREE that any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

DATE    11/22/05

WITNESS (LICENSED AGENT)

Austin Bleich

Austin Bleich

**FILE COPY**        **POLICY COPY**        **RETURN TO HOME OFFICE**
NB2005N-NJ

# EXHIBIT E

# NOTICE
# NEW JERSEY LIFE AND HEALTH INSURANCE
# GUARANTY ASSOCIATION ACT

Residents of New Jersey who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the New Jersey Life and Health Insurance Guaranty Association.

The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.

The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

## DISCLAIMER

**The New Jersey Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in New Jersey. You should not rely on coverage by the New Jersey Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.**

**The New Jersey Life and Health Insurance Guaranty Association
One Gateway Center
7th Floor
Newark, NJ 07102**

**State of New Jersey Department of Insurance
20 West State Street CN-325, Trenton, New Jersey 08625**

The state law that provides for this safety-net coverage is called the New Jersey Life and Health Insurance Guaranty Association Act, N J S A 17B:32A-1, et seq (the "Act")

## COVERAGE

The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in New Jersey and hold a life, health, or long-term care insurance contract, or they are insured under a group insurance contract, issued by a member insurer.

The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- the policy is issued by an organizatin which is not a member of the New Jersey Life and Health Insurance Guaranty Association.

The association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate as more fully described in Section 3 of the Act;
- dividends;
- credits given in connection with the administration of a policy for a group holder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them.)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out. The association cannot pay more than what the insurance company would owe under a policy or contract.

With respect to any one individual, regardless of the number of policies or contracts, the association will not pay more than $500,000 in life insurance death benefits and present value annuity benefits, including net cash surrender and net cash withdrawal values. Within this overall limit, the association will not pay more than $100,000 in cash surrender values for life insurance, $100,000 in cash surrender values for annuity benefits, $500,000 in life insurance death benefits, or $500,000 in present value or annuities – again, no matter how many policies and contracts that were with the same company, and no matter how many different types of coverages.

The association will not pay more than $2,000,000 in benefits to any one contract holder under any one unallocated annuity contract.

There are not limits on the benefits the association will pay with respect to any one group, blanket or individual accident and health insurance policies.

# Individual Term Life Insurance Policy To Age 95

Death Benefit payable to the Beneficiary upon death of the Insured prior to the Termination Date. Premiums are payable during the life of the Insured and prior to the Termination Date. Premiums are guaranteed to be level for the first 10 Policy Years. This policy does not accumulate any cash value. This policy contains a Conversion Option prior to the Termination Date. This policy is nonparticipating; no dividends are payable on this policy.

Signed for the Company at its home office on the Policy Date.

Cynthia L. Pevehouse
Secretary

Gary C. Bhojwani
President and CEO

**YOUR 30 DAY RIGHT TO EXAMINE YOUR POLICY**
You may return your policy within 30 days after receiving it if dissatisfied for any reason. You may return it to the agent or our home office. We will void the policy and mail a refund of any premium you paid within 10 days of receipt.

This is a legal contract between you and the Company

READ YOUR POLICY CAREFULLY

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
5701 Golden Hills Drive
Minneapolis, MN 55416-1297

P50570 - NJ

## GUIDE TO POLICY PROVISIONS

Policy Schedule ........................................................3, 3A

Definitions ........................................................4, 5

Grace Period ........................................................5

Premiums ........................................................5, 6

Beneficiary ........................................................6

Change of Beneficiary ........................................................6

Death Benefit ........................................................6

Payment of the Death Benefit ........................................................6

Reinstatement of Lapsed Policy ........................................................6

Misstatement of Age........................................................7

General Provisions ........................................................7, 8

Change of Premium Rate Class ........................................................8

Termination ........................................................8

Entire Contract ........................................................8

Conversion Option ........................................................9

Settlement Provisions ........................................................10

Settlement Tables ........................................................11

P50570 - NJ                                    2

| | |
|---|---|
| INSURED: | AUSTIN BLEICH |
| POLICY NUMBER: | 60012691 |
| POLICY DATE: | 11/15/2005 |
| SPECIFIED AMOUNT: | $1,300,000 |
| ISSUE AGE AND GENDER: | 64 MALE |
| PREMIUM RATE CLASS: | Superselect NT |
| ANNUAL PREMIUM: | $6,732.00 each year for the first 10 Policy Years |
| PREMIUM MODE ELECTED: | ANNUAL |
| PERIODIC PREMIUM FOR PREMIUM MODE: | $6,732.00 |

Total annual premium if Mode of Payment is:

| | | |
|---|---|---|
| Annual | $6,732.00 | ($6,732.00 X 1) |
| Semi-Annual | $7,001.28 | ($3,500 64 X 2) |
| Quarterly | $7,270.56 | ($1,817.64 X 4) |
| Monthly (EFT only) | $6,947.40 | ($578.95 X 12) |

| | |
|---|---|
| TERMINATION DATE: | 11/15/2036 |
| ANNUAL POLICY FEE: | $50 00 |
| OWNER AND BENEFICIARY: | As named in application or as later changed |

| OTHER COVERAGE: | Annual Rider Premium | Effective Date | Termination Date |
|---|---|---|---|
| Terminal Illness Accelerated Benefit Rider | No Rider Premium | 11/15/2005 | 11/15/2036 |

Policy Number:  60012691

## TABLE OF RENEWAL PREMIUMS

The Premium for this policy is shown on page 3.  This table shows the Guaranteed Annual Premiums payable each year applicable after the first 10 years.

### Superselect NT Risk Class

| Policy Year | Guaranteed Annual Premium | Policy Year | Guaranteed Annual Premium |
|---|---|---|---|
| 11 | $145,078.00 | 12 | $160,834.00 |
| 13 | $177,474.00 | 14 | $194,868.00 |
| 15 | $213,120.00 | 16 | $232,802.00 |
| 17 | $254,538.00 | 18 | $278,900.00 |
| 19 | $306,382.00 | 20 | $336,854.00 |
| 21 | $369,718.00 | 22 | $404,220.00 |
| 23 | $439,918.00 | 24 | $476,266.00 |
| 25 | $513,108.00 | 26 | $550,964.00 |
| 27 | $590,380.00 | 28 | $632,266.00 |
| 29 | $678,182.00 | 30 | $732,600.00 |
| 31 | $805,608.00 | | |

## TABLE OF MODAL FACTORS

The guaranteed Periodic Premium is equal to the Guaranteed Annual Premium times the Modal Factor

| Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|
| 1.00 | .52 | .27 | .086 |

PS50570-3

3A

# DEFINITIONS

This section provides the meaning of special terms used throughout this policy. Most of these terms are capitalized throughout this policy to help you easily recognize them. Provision titles, section titles, and terms used on the Policy Schedule are also capitalized for your convenience.

| | |
|---|---|
| **We, Our, Us** or the **Company** | Allianz Life Insurance Company of North America. The terms We, Our, Us or the Company may not be capitalized throughout this policy. |
| **You** and **Your** | The owner of this policy named in the application, unless later changed. The owner may be other than the person insured. You are solely entitled to exercise all rights of this policy until the death of the Insured. The terms You and Your may not be capitalized throughout this policy. |
| **Age** | The Insured's attained age at the last Policy Anniversary. |
| **Annuitant** | The person upon whose life a settlement option payment is based. |
| **Beneficiary** | The person(s) or entity to whom we will pay the Death Benefit if the Insured dies. |
| **Conversion Contract** | A different life insurance policy and any associated Riders or Endorsements we make available and to which you may convert this policy. |
| **Conversion Date** | The date you convert this policy for a Conversion Contract under the Conversion Option section. On the Conversion Date, this policy terminates and the Conversion Contract begins. |
| **Due Proof** | Due Proof will include a certified copy of the death certificate and proof of interest of the claimant. |
| **Endorsement** | An attachment to this policy that may provide an additional benefit or amend this policy. |
| **Insured** | The person whose life is insured under this policy. |
| **Irrevocable Beneficiary** | A designated Beneficiary that may not be changed without that Beneficiary's consent. |
| **Lapse** | Termination of this policy due to insufficient premium as described in the Grace Period provision. |
| **Monthly Anniversary Date** | The date of each month that corresponds to the date of the month of the Policy Date. If that date is not in a month, the last date of that month will be considered the Monthly Anniversary Date. |
| **Notice** | Our receipt of a satisfactory written request. |
| **Periodic Premium** | Annual Premium multiplied by the Modal Factor based on the selected Premium Mode as shown on the Policy Schedule. |
| **Policy Anniversary** | The Monthly Anniversary Date that occurs in the same month of each Policy Year as the Policy Date. The first Policy Anniversary is 12 months after the Policy Date. |
| **Policy Date** | Date shown on the Policy Schedule that determines the Monthly Anniversary Date, Policy Anniversaries, Policy Months and Policy Years. |
| **Policy Month** | The period between a Monthly Anniversary Date and the next Monthly Anniversary Date. The first Policy Month begins on the Policy Date. |
| **Policy Year** | A period of 12 consecutive months. The first Policy Year begins on the Policy Date, and subsequent Policy Years begin on the Policy Anniversary. All Policy Years end on the day before the next Policy Anniversary. |

P50570 - NJ

4

## DEFINITIONS  (continued)

| | |
|---|---|
| **Premium Coverage Period** | The period of time from the due date of one Periodic Premium payment to the next. |
| **Premium Mode** | The frequency of Periodic Premium payments in a year and is shown on the Policy Schedule, unless later changed. |
| **Premium Rate Class** | The rate class the Insured is assigned based on his or her insurance risk as determined through underwriting. The Insured's rate class is shown on the Policy Schedule. |
| **Reinstate, Reinstated** or **Reinstatement** | To restore this policy after it has Lapsed in accordance with the requirements stated in the Reinstatement provision. |
| **Rider** | An attachment to this policy that provides an additional benefit and can affect the values and benefits of this policy. |
| **Specified Amount** | The amount of life insurance in effect and shown on the Policy Schedule. |
| **Termination Date** | Date shown on the Policy Schedule. This is the latest date on which coverage under this policy terminates. |
| **Unearned Premium** | Premium paid for coverage beyond the Insured's date of death, the date this policy terminates due to Cancellation, or the Conversion Date. |
| | During the Grace Period, Unearned Premium is equal to zero. |

## PREMIUMS

| | |
|---|---|
| **Premium** | We will provide life insurance coverage under this policy in return for payment of premium. The first premium is due on the Policy Date and is shown on the Policy Schedule.  This policy is not in effect until the first premium is paid.  Premium, which includes the Policy Fee and any Rider charges, is as shown on the Policy Schedule, unless later changed, and is payable during the life of the Insured and prior to the Termination Date. Each premium after the first is due and payable in advance to our home office. A receipt of payment will be sent upon Notice. |
| **Periodic Premium** | You may choose to pay Periodic Premium based on the Premium Modes offered by us. The Periodic Premium is due at the beginning of each Premium Mode interval from the Policy Date.   The Periodic Premium amount and Premium Mode are shown on the Policy Schedule, unless later changed.   You may send Notice to change to a different Premium Mode.   The change will be effective on the next Policy Anniversary. |
| | Any premium received in excess of the Periodic Premium will be refunded to you within 30 days of its receipt. |
| **Grace Period** | A Grace Period is a period of 31 days after the due date of any premium. If we have not received the due Periodic Premium payment by the beginning of the Premium Coverage Period, we will give you written notification at your last known address that the Grace Period has begun. This policy will Lapse if all past due Periodic Premium is not paid before the end of the Grace Period.  While the Grace Period is in effect and until past due Periodic Premiums are paid, the Conversion Option cannot be elected. |

## PREMIUMS (continued)

| | |
|---|---|
| **Reinstatement of Lapsed Policy** | If this policy terminates due to Lapse, this policy may be Reinstated. To Reinstate this policy, the following conditions must be met.<br><br>1.  Notice for Reinstatement must be made within three years from the date of Lapse.<br>2.  We must receive an application at the home office, and the Insured must still be insurable pursuant to our underwriting standards.<br>3.  You must pay premium sufficient to cover unpaid premium due when this policy Lapsed.<br><br>The Specified Amount at the time of Reinstatement will be equal to the Specified Amount at the date of Lapse.<br><br>The Reinstatement will be effective as of the next Monthly Anniversary Date after we approve the application for Reinstatement. |

## THE BENEFICIARY

| | |
|---|---|
| **Who Receives the Death Benefit** | If this policy is in effect when the Insured dies, the Death Benefit will be paid to the Beneficiary.  The Beneficiary is the person(s) or entity named in the application unless changed as outlined in the Change of Beneficiary provision. |
| **Protection of the Death Benefit** | To the extent permitted by law, the Death Benefit will not be subject to the claims of the Beneficiary's creditors. |
| **If the Beneficiary Dies** | If any Beneficiary dies before the Insured, that Beneficiary's interest in the Death Benefit will end. If any Beneficiary dies at the same time as the Insured, or within 120 hours after the Insured, that Beneficiary's interest in the Death Benefit will end as if the Beneficiary predeceased the Insured.  If the interest of all named Beneficiaries has ended when the Insured dies, we will pay the Death Benefit to you. If you are not living at that time, we will pay the Death Benefit to any surviving owner or, if none, to your estate. |
| **Change of Beneficiary** | You may change the named Beneficiary by sending Notice. The change will not be effective until we record it at our home office. Even if the Insured is not living when we record the change, the change will take effect retroactively as of the date it was signed.  Any benefits we pay before we record the change will not be affected. An Irrevocable Beneficiary must give written consent before we will change the Beneficiary. |

## PAYMENT OF THE DEATH BENEFIT

| | |
|---|---|
| **Notice of Claim** | Upon receipt of Notice of the Insured's death, we will send appropriate forms to the Beneficiary(s) for completion. |
| **Proof of Death** | Upon receipt of Due Proof of the Insured's death, the Death Benefit will be sent to the Beneficiary(s) from our home office.  Settlement shall be made within 60 days after receipt of Due Proof of the Insured's death. |
| **Death Benefit** | The Death Benefit is equal to (a) plus (b) less (c), where:<br><br>(a)  is the Specified Amount;<br>(b)  is any Unearned Premium; and<br>(c)  is premium necessary to keep this policy in effect if the Insured dies during the Grace Period.<br><br>If required by law, interest will be paid on the Death Benefit.<br><br>The Death Benefit may be affected by the Misstatement of Age provision or by any attached Riders or Endorsements. |

## BASIS OF VALUES

**Policy Values**

This policy does not accumulate any cash value. No loans are available under this policy

Values and reserves are equal to or greater than those required by law. Where required, a detailed statement of the method of computation of values and reserves have been filed with the state of policy issue.

## GENERAL PROVISIONS

**Contestability**

This policy and any attached Riders or Endorsements were issued based on the information you provided in the application. Any misrepresentations on the application or application for Reinstatement may cause this policy to be voided or rescinded, or a claim to be denied. After this policy and any attached Riders or Endorsements have been in effect during the Insured's lifetime for a period of two years from the Policy Date or from the date of our approval of the application for Reinstatement, this policy shall become incontestable as to a misstatement made in the application or application for Reinstatement. The two year Contestability period does not apply to any Rider providing benefits specifically for disability or death by accident.

**Suicide**

We will be liable only for the return of the premiums paid if the Insured dies by suicide while sane or insane within two years from the Policy Date.

**Misstatement of Age**

If the Insured's age is misstated on the application, we will adjust the Death Benefit for this policy and any additional benefit Riders or Endorsements covering the Insured to that which the premium paid would purchase at the correct Age.

A new Policy Schedule reflecting the correct issue age will be sent to you.

# GENERAL PROVISIONS (continued)

**Change of Premium Rate Class**

After the first Policy Anniversary and no more frequent than once annually you may request a change in Premium Rate Class. Upon receipt of the Notice and evidence satisfactory to us that your health has sufficiently improved, we will allow a change in Premium Rate Class.

A change in Premium Rate Class will be subject to the following conditions:

1. you may be required to pay a fee of no greater than $100 for any evidence we may need to establish your health; and
2. a Company approved healthcare practitioner must provide medical evidence of improved health.

If we approve a Change of Premium Rate Class request, a new Policy Schedule will be issued to you. The Premium Rate Class change will be effective on the next Periodic Premium due date after our approval.

**The Entire Contract**

We have issued this policy in consideration of the application and the initial premium payment. A copy of the application is attached and is a part of this policy. This policy, any attached Endorsements, any attached Riders, the application, and any Reinstatement application together are the Entire Contract. All statements made by or for the Insured are considered representations and not warranties. No statements other than those contained in any attached application will be used to void the contract or defend a claim.

**Who Can Make Changes in this Policy**

Only our President together with our Secretary have the authority to make any changes to this policy. Any change must be in writing.

**Assignment of this Policy**

You may assign or transfer all or specific ownership rights of this policy. An assignment will be effective upon Notice. We will record your assignment. We will not be responsible for its validity or effect, nor will we be liable for actions taken on payments made before we receive and record the assignment.

**Death of the Owner**

If you are not the Insured and you die before the Insured, your rights will pass to the executor or personal representative of your estate unless ownership has been otherwise assigned.

**Cancellation**

You have the right to terminate this policy at any time by providing Notice of cancellation to us. We will refund any Unearned Premium as of the date this policy terminates.

**Termination**

This policy will terminate at the earliest of:

1. the date the Insured dies;
2. the date of Lapse;
3. the date this policy is requested to be cancelled by you;
4. the Conversion Date;
5. the date the Specified Amount is equal to zero; or
6. the Termination Date.

**No Dividends are Payable**

This is a nonparticipating policy. This policy does not participate in our profits or surplus.

**Duplicate Policy**

Upon Notice, we will send a duplicate of this policy. A charge of no greater than $25 may be assessed for the duplicate policy.

## CONVERSION OPTION

**Conversion Option**

If the Conditions of Eligibility are met, you may convert this policy to a Conversion Contract we may make available, with a specified amount equal to or less than the Specified Amount. The Conversion Contract will begin on the Conversion Date.

We will base the premiums for the Conversion Contract on:

1. the Insured's attained Age on the Conversion Date; and
2. the Insured's Premium Rate Class under the Conversion Contract that is most comparable to the Premium Rate Class under this policy.

The Suicide and Contestability provisions of a Conversion Contract will be measured from the Policy Date of this policy.

We will refund any Unearned Premium as of the Conversion Date.

**Conditions of Eligibility**

You are eligible to convert this policy to a Conversion Contract that we make available if all of the following requirements are met:

1. the Conversion Option is elected within the first 5 years of this policy;
2. the Conversion Option is elected before the Insured's Age 71;
3. Notice to convert this policy is received at the home office prior to the date you have requested that this policy terminate;
4. this policy is received at the home office;
5. all due Periodic Premiums are paid before the Conversion Date; and
6. the required premium for the Conversion Contract is paid.

## SETTLEMENT PROVISIONS

**Settlement Provisions**

When the Insured dies, we will pay the Death Benefit in a lump sum unless a settlement option is chosen.

During the lifetime of the Insured, you may choose a settlement option for the Beneficiary. The Beneficiary may choose a settlement option if you have not selected a settlement option payment prior to the Insured's death.

If the Beneficiary is not an individual, our approval is required for settlement option elections.

Settlement option payments will be paid to the Beneficiary for Death Benefit settlements. The settlement option payments will be based on the Annuitant's life, where applicable. For Death Benefit settlements the Beneficiary is the Annuitant.

The guaranteed settlement payments will be based on 1% interest and the Annuity 2000 Mortality Table. All settlement payments will be based on the interest rate declared for settlement payments, which will not be less than the guaranteed settlement interest rate.

Settlement options other than Options A – D, may be arranged with our agreement. We may request proof of the Annuitant's or the named survivor's age. There must be at least $1,000 available for a settlement option and each installment payment must be at least $25. If the benefit is insufficient to meet these requirements, the benefit will be paid in a lump sum.

If the Beneficiary does not live to receive all guaranteed payments under Options A, B, or C, plus any accumulated settlement interest, we will pay the remaining benefit to the Beneficiary's estate or as otherwise designated.

Upon Notice, we will apply the benefit according to one of the following settlement options.

**OPTION A: Installments for a Guaranteed Period**

We will pay equal installments for a guaranteed period of five to thirty years. If the Death Benefit is paid in installments over a minimum of 10 years, the Death Benefit will be increased by 10%. Each installment will consist of part benefit and part settlement interest. The installments will be paid as requested on a monthly, quarterly, semi-annually or annual basis. See Table A.

**OPTION B: Installments for Life with a Guaranteed Period**

We will pay equal installments as long as the Annuitant is living. We will make payments for at least the guaranteed period. The Death Benefit will increase by 10% if paid under this Option. The installments will be paid as requested on a monthly, quarterly, semi-annually or annual basis. See Table B.

**OPTION C: Installments of a Selected Amount**

We will pay installments of a selected amount until we have paid the entire benefit and accumulated settlement interest. The installments must be for at least five years and no more than 30 years. If the Death Benefit is paid in installments over a minimum of 10 years, the Death Benefit will be increased by 10%.

**OPTION D: Joint and Survivor Annuity**

We will pay equal installments as long as either the Annuitant or named survivor are living. The Death Benefit will increase by 10% if paid under this Option. We will pay the installments as requested on a monthly, quarterly, semi-annually or annual basis. See Table C.

**Misstatement of the Annuitant's Age**

If there is a misstatement of the Annuitant's age, we will adjust the payments to the amount that the settlement proceeds would have purchased at the correct age. The Annuitant's age is determined as of his or her last birthday. Any underpayment as a result of such misstatement must be paid immediately in one sum. Any overpayment will be deducted from the current or succeeding payments due under this policy.

## SETTLEMENT TABLES

Purchase Rate Tables are based on 1% interest and the Annuity 2000 Mortality Tables.  Values for Annuitant ages and minimum guaranteed periods not shown will be furnished upon Notice.

| TABLE A<br>INSTALLMENTS FOR EACH $1,000 PAYABLE UNDER OPTION A | | | | | |
|---|---|---|---|---|---|
| Guarantee<br>Period | Monthly<br>Installments | Guarantee<br>Period | Monthly<br>Installments | Guarantee<br>Period | Monthly<br>Installments |
| 5 | 17.08 | 14 | 6.37 | 23 | 4.05 |
| 6 | 14.30 | 15 | 5.98 | 24 | 3.90 |
| 7 | 12.32 | 16 | 5.63 | 25 | 3.76 |
| 8 | 10.83 | 17 | 5.33 | 26 | 3.64 |
| 9 | 9.68 | 18 | 5.05 | 27 | 3.52 |
| 10 | 8.75 | 19 | 4.81 | 28 | 3.41 |
| 11 | 7.99 | 20 | 4.59 | 29 | 3.31 |
| 12 | 7.36 | 21 | 4.40 | 30 | 3.21 |
| 13 | 6.83 | 22 | 4.22 | | |

| TABLE B<br>MONTHLY INSTALLMENTS FOR EACH $1,000 PAYABLE UNDER OPTION B | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Age on<br>Date of<br>Settlement | Male Annuitant<br>Guarantee Period | | Female Annuitant<br>Guarantee Period | | Age | Male Annuitant<br>Guarantee Period | | Female Annuitant<br>Guarantee Period |
| | 10 Years | 20 Years | 10 Years | 20 Years | | 10 Years | 20 Years | 10 Years | 20 Years |
| 50 | 3.00 | 2.92 | 2.77 | 2.73 | 66 | 4.65 | 4.00 | 4.23 | 3.84 |
| 51 | 3.07 | 2.98 | 2.83 | 2.78 | 67 | 4.80 | 4.07 | 4.37 | 3.91 |
| 52 | 3.14 | 3.04 | 2.89 | 2.84 | 68 | 4.95 | 4.13 | 4.52 | 3.99 |
| 53 | 3.22 | 3.11 | 2.96 | 2.90 | 69 | 5.11 | 4.18 | 4.67 | 4.06 |
| 54 | 3.30 | 3.17 | 3.03 | 2.96 | 70 | 5.28 | 4.24 | 4.83 | 4.13 |
| 55 | 3.38 | 3.24 | 3.10 | 3.02 | 71 | 5.45 | 4.29 | 5.00 | 4.19 |
| 56 | 3.47 | 3.30 | 3.18 | 3.09 | 72 | 5.62 | 4.33 | 5.18 | 4.25 |
| 57 | 3.56 | 3.37 | 3.26 | 3.16 | 73 | 5.80 | 4.37 | 5.37 | 4.30 |
| 58 | 3.66 | 3.44 | 3.35 | 3.23 | 74 | 5.98 | 4.41 | 5.56 | 4.35 |
| 59 | 3.76 | 3.51 | 3.44 | 3.30 | 75 | 6.17 | 4.44 | 5.76 | 4.39 |
| 60 | 3.87 | 3.59 | 3.53 | 3.37 | 76 | 6.35 | 4.47 | 5.96 | 4.43 |
| 61 | 3.99 | 3.66 | 3.63 | 3.45 | 77 | 6.53 | 4.49 | 6.17 | 4.46 |
| 62 | 4.11 | 3.73 | 3.74 | 3.53 | 78 | 6.72 | 4.51 | 6.38 | 4.49 |
| 63 | 4.23 | 3.80 | 3.85 | 3.60 | 79 | 6.90 | 4.53 | 6.59 | 4.51 |
| 64 | 4.36 | 3.87 | 3.97 | 3.68 | 80 | 7.07 | 4.55 | 6.79 | 4.53 |
| 65 | 4.50 | 3.94 | 4.10 | 3.76 | | | | | |

| TABLE C<br>MONTHLY INSTALLMENT PER $1,000 PAYABLE UNDER OPTION D | | | | | | | |
|---|---|---|---|---|---|---|---|
| Age of Male on<br>Date of<br>Settlement | Age of Female on Date of Settlement | | | | | | |
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
| 50 | 2.49 | 2.63 | 2.74 | 2.84 | 2.90 | 2.95 | 2.98 |
| 55 | 2.58 | 2.76 | 2.94 | 3.09 | 3.21 | 3.29 | 3.35 |
| 60 | 2.65 | 2.88 | 3.12 | 3.34 | 3.54 | 3.69 | 3.80 |
| 65 | 2.70 | 2.97 | 3.27 | 3.58 | 3.89 | 4.16 | 4.36 |
| 70 | 2.73 | 3.03 | 3.38 | 3.78 | 4.22 | 4.64 | 5.01 |
| 75 | 2.75 | 3.07 | 3.46 | 3.93 | 4.50 | 5.11 | 5.70 |
| 80 | 2.76 | 3.09 | 3.51 | 4.04 | 4.70 | 5.50 | 6.37 |

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
5701 Golden Hills Drive
Minneapolis, MN 55416-1297

**(800) 950-1962**

Individual Term Life Insurance Policy to Age 95.

Death Benefit payable to the Beneficiary upon the death of the Insured prior to the Termination Date. Premiums are payable during the life of the Insured and prior to the Termination Date. Premiums are guaranteed to be level for the first 10 Policy Years. This policy does not accumulate any cash value. This policy contains a Conversion Option prior to the Termination Date. This policy is nonparticipating; no dividends are payable on this policy.

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
5701 Golden Hills Drive
Minneapolis, MN 55416-1297

# Terminal Illness Accelerated Benefit Rider

The Company has issued this Rider as a part of the Entire Contract. If there are any conflicts between this Rider and the Base Policy, the provisions of this Rider will prevail.

**Receipt of these Accelerated Benefits may be taxable. Assistance should be sought from a professional tax advisor.**

| | |
|---|---|
| **CONSIDERATION** | We have issued this Rider in consideration of the application. A copy of the application is attached to the Base Policy. |
| **ACCELERATED BENEFIT** | Notice requesting an Accelerated Benefit must be provided to our home office. The Accelerated Benefit will be paid in a lump sum. The maximum Accelerated Benefit amount you may request is the lesser of: |

1. $1,000,000; or
2. 100% of the Eligible Amount.

If you accelerate less than 100% of the Eligible Amount, the minimum remaining Specified Amount must be at least $10,000.

The minimum Accelerated Benefit amount you may request is $10,000.

The payment to you will equal the requested Accelerated Benefit amount discounted for one half year's interest at an annual rate equal to the Prime Rate.

| | |
|---|---|
| **DEFINITIONS** | Definitions specific to this Rider that are not in the Base Policy follow: |
| **Base Policy** | The policy to which this Rider is attached. |
| **Due Proof of Terminal Illness** | The information or evidence submitted to us sufficient to satisfy us of the existence of a fact or condition. |
| **Eligible Amount** | The Death Benefit of the Base Policy. |
| **Family Member** | Includes your spouse or the Insured's spouse. It also includes your or your spouse's or the Insured's or the Insured's spouse's: daughter, son, parent, sister, brother, grandparent or grandchild; and the same degree of relationship as effected by a common law marriage if recognized in the state where you or the Insured reside. |
| **Physician** | Physician is a person who: |

1. is licensed to practice medicine or surgery and prescribe and administer drugs; and
2. is legally qualified as a medical practitioner and required to be recognized according to applicable state insurance laws.

We consider a person to be a Physician only when the person is performing tasks that are within the limits of the person's medical license, and such tasks are appropriate to the care of the Insured. We will not recognize you, the Insured or a Family Member as a Physician for claims made under this Rider.

| | |
|---|---|
| **Prime Rate** | The Prime Rate posted in the Money Rate section of the Wall Street Journal as of the date the Accelerated Benefit is calculated. If the referenced publication is discontinued, we will utilize information from another suitable source. |

| | |
|---|---|
| **Terminal Illness** | A diagnosis by a Physician of a medical condition that is expected to result in death of the Insured within 12 months, or less. |
| **CONDITIONS OF ELIGIBILITY** | An Accelerated Benefit will be payable to you if all of the following requirements are met: |

1. Due Proof of Terminal Illness has been received by us.
2. The Base Policy and this Rider were in effect at the time of a diagnosis of Terminal Illness.
3. None of the limitations and exclusions in the Limitations and Exclusions section of this Rider applies.
4. If the Base Policy is assigned, the assignee has agreed in writing for you to receive the benefit; otherwise the benefit will be payable to the assignee.
5. If an Irrevocable Beneficiary has been named, the Irrevocable Beneficiary has agreed in writing for you to receive the benefit.
6. The Insured is living at the time when all requirements, (1) through (5) as stated within this provision, are met.

| | |
|---|---|
| **ACCELERATED BENEFIT EFFECT ON BASE POLICY** | The Base Policy Death Benefit will be reduced by the Accelerated Benefit amount requested.<br><br>The Periodic Premium for the Base Policy is reduced in the same proportions as the Base Policy Death Benefit, except the Policy Fee will not be reduced.<br><br>Accidental death benefit coverage, if any, will not be affected by benefits paid by this Rider. |
| **REQUIREMENTS FOR PROOF OF OCCURRENCE** | For Due Proof of Terminal Illness occurrence, we must be furnished a diagnosis of a Terminal Illness by a Physician, including documentation supported by clinical, radiological, histological and laboratory evidence of the diagnosis.  The Due Proof of Terminal Illness occurrence must be satisfactory to us and we may require, at our expense, an examination or tests by a Physician of our choice. |
| **NOTICE OF CLAIM** | Notice of Claim must be given within 90 days after a diagnosis of a Terminal Illness has been made or as soon as reasonably possible thereafter.  Notice of Claim must be given no later than one year from the time specified unless you were legally unable to act.<br><br>The Notice can be given to us at our home office or to any one of our agents.  Notice should include the Insured's name and the policy number. |
| **CLAIM FORMS** | When we receive a Notice of Claim, we will send you forms for filing a claim. |
| **PRE-EXISTING CONDITION LIMITATIONS** | Benefits are not payable for any Terminal Illness that occurs within the 30 days immediately following the Rider Date, unless it is caused by accident sustained after the Rider Date |
| **LIMITATIONS AND EXCLUSIONS** | Only one Accelerated Benefit payment is allowed.<br><br>No benefits under this Rider will be provided for any claim filed outside of the filing limitation described in the Notice of Claim provision or for any loss that is caused by or occurs as a result of: |

1. intentionally self-inflicted bodily injury, suicide or attempted suicide, whether sane or insane;
2. an act of war, declared or undeclared, or during service in any of the armed forces;
3. participation in, or attempting to participate in, a felony, riot or insurrection; or
4. the voluntary misuse of alcohol or taking of drugs.  This exclusion does not apply if the drugs are administered by a Physician or taken according to a Physician's instructions.

| | |
|---|---|
| **RIDER DATE** | The Effective Date of this Rider is shown on the Policy Schedule. |
| **TERMINATION** | This Rider will terminate on the earlier of the date an Accelerated Benefit has been paid under this Rider or the Termination Date of the Base Policy. |
| **REINSTATEMENT** | In addition to the provisions of the Base Policy relating to reinstatement, this Rider will be Reinstated at the same time the Base Policy is Reinstated. |
| **NO DIVIDENDS ARE PAYABLE** | This Rider does not participate in our profits or surplus. |

In all other respects the provisions, conditions, exceptions and limitations contained in the Base Policy remain unchanged and apply to this Rider. Signed for the Company in Minneapolis, Minnesota

Cynthia L. Pevehouse
Secretary

Gary C. Bhojwani
President and CEO

# EXHIBIT F

Allianz Life Insurance Company of North America

PO Box 59060
Minneapolis, MN 55459-0060

800/950-1962

**Overnight**

5701 Golden Hills Drive
Minneapolis, MN 55416-1297



# Life Claim Form

Each beneficiary/claimant must complete and sign a Claim Form. Please complete Sections one, two, three, and four. Attach **one certified copy of the insured's death certificate**, which must remain in the possession of the Company. Also provide a dated obituary, if available. The cost, if any, of completing claim requirements, is the responsibility of the beneficiary/claimant. If you have any questions, feel free to call your agent or our Claims Department at 800/950-1962.

## Section one – Special instructions (none may apply)

Please review the following statements and provide any required information:

- If any of the beneficiaries named in the policy are deceased, a certified copy of the death certificate of such deceased beneficiary must accompany this form.
- If the policy is payable to the estate or the executor or administrator of the insured, the Claim Form should be completed by the executor or administrator. A certificate of appointment (letters of probate) must accompany this form.
- If the policy is payable to a trust, the trustee should complete the Claim Form. A copy of the trust must accompany this form.
- If the policy has been assigned by the deceased, either absolutely or collaterally, the assignee will need to complete a Claim Form. The beneficiary will also need to complete a Claim Form if there are proceeds payable in excess of the amount assigned. For collateral assignments, the assignee will also need to provide a written statement, signed and dated, of the current balance owed to the assignee.
- If all or any portion of the proceeds are assigned for funeral expenses, we require 1) an itemized statement of the total funeral expenses and 2) a valid assignment bearing the signatures of all beneficiaries who are party to the assignment.
- If the beneficiary is a minor, the Claim Form should be completed by the guardian of the minor's estate. Legal guardianship papers must accompany this form.

## Section two – Information about the deceased

Policy number(s) under which you are presenting a claim: 600D2691

Deceased's full name: Austin Bleich

Address: 15 Kensington Court    City: Tenafly    State: NJ    Zip:

Date of birth: 2/1/41    Date of death: 9/21/07

Deceased's Social Security number: 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    Cause of death: Cancer

Does the deceased have any other insurance policies or contracts with Allianz Life° (other than noted above)?

☒ No other policies or contracts    ☐ Yes, there are other policies or contracts. (Please complete the following)

| Policy/Contract # | Type of coverage | Administrator name, contact and phone number (if known) |
|---|---|---|
| | | |
| | | |

If the policy was issued or reinstated within two years of the insured's date of death, please complete the following:

A. When did the insured first complain of or give other indications of last illness? last week of 06

B. When did the insured first consult a physician for last illness? Sometime between Sept to Nov-06

C. Names of all physicians or practitioners who attended the insured within five years preceding death. (Attach additional sheet if necessary)

| Names | Addresses | Date of attendance | Condition(s) |
|---|---|---|---|
| Dr. Leonard Raifman (1st) | 1000 Park Ave. N.Y. N.Y. 10028 | 9-06 white Bld | Stomach Indigestion |
| Dr. Howard Brickner | Othmer Hospital - E.18 C St-N.Y. N.Y. (212) 995-7410 | 9-06 to date of death | Stomach Discomfort |
| Dr. Michael Wayner | Kasman | | performed Ultrasound Endoscopy |

Policy number: 600/ 269/

## Section three – Payment of proceeds (choose A or B)

**A.** ☐  **Select annuity option settlement**

We will make payments according to any annuity option settlement available in the deceased's contract. Please see contract for complete list of options. We will pay the installments as requested either monthly, quarterly, semiannually, or annually. The option chosen must not extend beyond the beneficiary's life expectancy. Installments will be based on payout rates we declare, but will never be less than those specified in the deceased's contract. Any life option will require proof of age. Please indicate below the mode of payment and your contingent owner.

☐ **Installments for a guaranteed period**–We will pay equal installments for a guaranteed period as specified in the deceased's contract. Number of guaranteed years: ☐ 5  ☐ 10  ☐ 15  ☐ 20

☐ **Installments for life** (proof of age required)–We will pay equal installments as long as the beneficiary is living.

☐ **Installments for life with a guaranteed period** (proof of age required)–We will pay equal installments as long as the beneficiary is living. If the beneficiary dies before the minimum term has expired, payments continue to the owner until the end of the term. Number of guaranteed years: ☐ 5  ☐ 10  ☐ 15  ☐ 20

☐ **Benefit deposited with interest**–We will hold the benefit on deposit for the minimum period specified in the deceased's contract. Interest will be paid on the benefit as earned.

**Payment mode of settlement option selected:** ☐ Monthly  ☐ Quarterly  ☐ Semiannual  ☒ Annual

The contingent owner (claimant's beneficiary) will receive any guaranteed remaining payments in the event of your death.

Your contingent owner: Name:_____  Relationship:_____

**B.** ☐  **Select lump-sum distribution**  (choose one method)

☐ ~~Payment by guaranteed benefit account~~ ~~Your benefit is automatically available to you in an interest-bearing guaranteed benefit account. You will receive a checkbook and will easily be able to take all of your funds at once, by writing a check for the full amount. You may also leave your account open and earn interest at a competitive rate and write checks on the balance as needed. Please be advised that in the event of your death, the balance of your account will be paid to your estate.~~
~~The guaranteed benefit account is not available for benefits under $5,000.00. If this box is checked, a lump-sum check will be issued.~~

☑ **Payment by check** Your benefit will be paid in the form of a check.

**Any death benefit selection terminates all provisions of the policy.**

## Section four – Information about the beneficiary/claimant

Beneficiary/claimant name (please print): ✓ CANDICE    BLEICH

Address: 15 Kensington Ct    City: Tenafly    State: N.J. Zip: 07670

Birthdate: 3 / 21 / 45    Phone number: Day ( 201 ) 569-5770  Evenings (_____)

Relation to deceased: WIFE    Taxpayer ID# (Social Security number): 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

E-mail address (optional): _____

**Certification** - You must cross out item (2) below if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. Under the penalties of perjury, by signing below I certify (1) that the number shown on this form is my correct Taxpayer Identification number, and (2) that I am not subject to withholding because (a) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (b) if I ever was so notified, the IRS has notified me that I am no longer subject to backup withholding. The Internal Revenue Service does not require your consent to any provisions of this document other than the certifications required to avoid backup withholding.

Signature of beneficiary/claimant    Date
*Candice Bleich*    10-19-07

52041 (AR, CO, FL, KS, NC. ND)  (R-7/2004)    Page 2 of 4

## Authorization

**Instructions:** The authorization should be completed and signed by the insured. If the insured is unable to sign, the authorization should be completed and signed by the legal guardian or next-of-kin.

To all physicians, hospitals, medical service providers, druggists, employers, consumer reporting agencies, law enforcement agencies, and any other agencies or organizations (including other insurance companies, Social Security Administration, Blue Cross-Blue Shield, self-insured and prepaid health plans):

You are authorized to permit Allianz Life, its Third Party Administrators, and its authorized representatives to view and obtain a copy of ALL RECORDS including employment, law enforcement, tax, financial, insurance claim records, and medical records as to examination, history, diagnosis, treatment, and prognosis with respect to any physical or mental condition including information relating to mental illness, drug or alcohol treatment, HIV (AIDS virus), and disease of

_Austin Bleich_

Print name of insured and policy number

I understand the information obtained will only be used by Allianz Life to determine eligibility for insurance and benefits claimed under the insured's policy. I consent to redisclosure of such information to reinsuring companies, the Medical Information Bureau and such other persons or organization performing business or legal services in connection with my claim, or as may be otherwise lawfully required. Such information will not be given, sold, transferred, or relayed to any other person not specified in this form without my consent.

I understand this authorization may be revoked by written notice to Allianz Life but this revocation will not apply to information already released. If not revoked, this authorization will be valid while the claim is pending but not to exceed a maximum of two years from the date below. I know I may request to receive a copy of this authorization.

I also agree a photographic copy of this authorization shall be as valid as the original.

| Date: 10/7/07 | Signed: _Candice Bleich_ | Relationship to insured if signed by other than insured: WIFE |
|---|---|---|

If signed by other than the insured, please print name and address and include guardianship papers or other evidence of legal representation.

Allianz Life Insurance Company
of North America

**Allianz ⑪**

PO Box 1344
Minneapolis, MN 55440-1344

## Fraud Notice

**IMPORTANT:** This is part of the claim form. Review the applicable fraud notice. Sign and date below and return along with the claim form.

Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person submits an insurance application or statement of claim containing any materially false, incomplete or misleading information may be committing a crime and may be subject to civil or criminal penalties and may be denied coverage and/or benefits.

The laws of some states require us to furnish you with the following notice:

**California, Oregon, and Texas:** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Florida:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**New Hampshire:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact, material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**New York:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

| Signature of person/persons completing this form | Date |
|---|---|
| *Candice Bleich* | 10/7/07 |
| Printed name of person/persons completing this form | |
| CANDICE BLEICH | |
| Signature of person/persons completing this form | Date |
| | |
| Printed name of person/persons completing this form | |
| | |

ENT-028

(R-11/2005)



Allianz Life Insurance Company
of North America

PO Box 59060
Minneapolis, MN 55459-0060

# Authorization for Release of Health Information
## To Allianz Life Insurance Company of North America ("Company")
### (This authorization complies with the HIPAA Privacy Rule)

*Auston Bleich*
Name of Insured (Please print)

*G00 / 2691*
Policy number

I authorize any health plan, physician, healthcare professional, hospital, clinic, laboratory, pharmacy, medical facility, or other healthcare provider that has provided payment, treatment, or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other protected health information concerning me to the Company, its agents, employees, representatives and reinsurers. This includes information on the diagnosis and treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco.

I also authorize any insurance company, my insurance agent, the Medical Information Bureau (MIB), employers, consumer reporting agencies, health plan administrators, government agencies, relatives, friends, neighbors, and others with whom I am acquainted ("Other Persons") that have any employment, law enforcement, financial, insurance or medical records or knowledge of me or my health, to give to the Company, its agents, its employees, its representatives and its reinsurers any such records and information. These include records and information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco.

By my signature below, I terminate any agreements I have made with My Providers or with Other Persons to restrict my protected health information and I instruct My Providers and Other Persons to release and disclose my entire medical record and other records or knowledge of me or my health without restriction.

This protected health information is to be disclosed under this Authorization so that the Company, its agents, employees, representatives, and reinsurers, may administer claims and determine or fulfill responsibility for coverage and provision of benefits in respect to the above Policy.

The Company, its agents, employees, representatives, and reinsurers may release information obtained by this Authorization to the MIB, reinsurers, and other persons and entities performing business or legal services in connection with my claim

This Authorization shall remain in force for 24 months following the date of my signature below, and a copy of this Authorization is as valid as the original. I understand that I have the right to revoke this Authorization in writing at any time by sending a written request for revocation to Allianz Life Insurance Company of North America at 5701 Golden Hills Drive, Minneapolis, MN 55416-1297.

I understand that a revocation is not effective if My Providers and Other Persons have relied on this Authorization or to the extent that the Company has a legal right to contest a claim under an insurance policy or to contest the policy itself. Except as stated above, a revocation is effective immediately after receipt by the Company. I understand that any information that is disclosed pursuant to this Authorization may be redisclosed and no longer covered by certain federal rules governing privacy and confidentiality of health information.

I also understand that if I refuse to sign this Authorization or revoke this Authorization, the Company may not be able to make any claim or benefit payments under the above Policy and a pending insurance action may be adversely affected

I acknowledge that I have received a copy of this Authorization.

*Claudia Bleich*
Signature of Insured or Personal Representative

*Oct 7, 07*
Date

Description of Personal Representative's authority or relationship to Insured

S2154

(R-11/2005)

# EXHIBIT G

Allianz Life Insurance Company of North America

**Allianz ⑪**

PO Box 59060
Minneapolis, MN 55459-0060

800/950-1962

January 31, 2008


CANDICE BLEICH
15 KENSINGTON CT
TENAFLY NJ 07670


Re:    **Austin Bleich, Deceased**
       **Date of Death: September 21, 2007**
       **Policy Number 60012691**


Dear Ms. Bleich:

This letter concerns your claim benefits under the above-referenced life insurance policy. Based on the information you submitted and the information we obtained from Mr. Bleich's medical sources we have completed our review of your claim. The following explains the conclusion of our review and final determination.

As indicated in previous correspondence, because we were notified of a claim within the policy's two-year contestable period, we conducted a review to verify Mr. Bleich's representations at time of application and the Amendment to the Application and delivery of the policy. Enclosed for reference are copies of the policy application, Part II of the application, phone application (GenApp Online Report), Amendment to the Application, and Policy Delivery Receipt.

On September 30, 2005, Mr. Bleich signed an application for life insurance under the above referenced policy. On November 22, 2005, he signed an Amendment to the Application that was made part of his application for the life insurance. In addition to the application information, the information Mr. Bleich provided on the Amendment to the Application was relied upon in issuing him a life insurance policy.

Over Mr. Bleich's signature, the Amendment to the application states, "Since the date of the original application of this policy, the proposed insured(s) and any family members proposed for insurance in the application: (a) have not applied for insurance which was declined, postponed, or modified; and (b) have no application for insurance pending with another company; and (c) have not suffered an illness or an injury; and (d) have not consulted or been examined by a physician or practitioner; and (e) have not changed occupation EXCEPT AS FOLLOWS:" No exceptions were noted.

During the course of our claim review we received copies of Mr. Bleich's medical records from Dr. Leonard Raifman, and Cabrini Medical Center. The records from Dr. Leonrad Raifman indicate that Mr. Bleich had a CT scan of the abdomen and pelvis on November 7, 2005 which was highly suspicious for a pancreatic mass. A letter addressed to Dr. Leonard Raifman from Dr. Franklin Kasmin dated November 15, 2005 indicates that Mr. Bleich underwent an endoscopic ultrasound at Beth Israel Medical Center on November 14, 2005.  The letter further states, "The neck of the pancreas was diffusely hypoechoic, consistent with a mass. The more proximal pancreatic duct was markedly dilated, and the tissue in the body and tail was diffusely

Page 2
Policy 60012691
January 31, 2008

hypoechoic and abnormal. Multiple biopsies were taken of this region of abnormality in the neck of the gland. "  Dr. Raifman's records included a copy of a Radiology Report of a CT scan of the abdomen, that was performed on November 18, 2005. The impression on the report stated, "Mass at the pancreatic body and neck with vascular encasement as above. Findings are most consistent with neoplasm, presumably pancreatic adenocarcinoma…" Medical information indicates further that Mr. Bleich died of pancreatic cancer on September 21, 2007.

In reviewing Mr. Bleich's medical information with our Underwriting Department, they advised that had they been aware of this information, they would not have offered life insurance coverage to him. Because this information was material to our underwriter's decision to offer coverage, it is Allianz Life's position that the contract under the Life insurance policy 60012691 is null and void from inception, and our liability is limited to the return of all premiums paid.  In addition, it is our position that at the time the policy was issued, accepted, and received, Mr. Bleich was not insurable.

We are enclosing a Rescission Agreement, along with a check in the amount of $13,315.85, representing the refund of premiums. If you accept rescission of the policy, please execute the Rescission Agreement and return in the enclosed postage-paid envelope and negotiate the premium refund check.

Please be advised that we have retained counsel in New Jersey, Mr. Steven Del Mauro, who will commence a civil action. If you accept the rescission, we will dismiss the civil action.

If for any reason you disagree with this disposition, or if you have any additional information that should be brought to our attention, please let us know as we are very willing to further review this matter.  We do not intend to waive any rights or defenses, including but not limited to obtaining additional medical records or conducting additional inquiries should this claim be reconsidered in the future based upon new information.  We also do not waive any of our rights or defenses with regard to the contract or applicable law.

Sincerely,


Julie Kleve, FLHC, ACS, LTCP
Claim Consultant


Enclosure

c:  Laurie Ruckel, Loeb & Loeb
    Harrison Webb, agent (Medical information removed due to privacy.)

RESCISSION AGREEMENT

This is an agreement between Candice Edelbaum Bleich of Tenafly, New Jersey and Allianz Life
Insurance Company of North America.

## Recitals

\*      Austin Bleich was the owner and insured under term life insurance policy No. 60012691 ("the
        Policy") issued by Allianz Life Insurance Company of North America ("the Company").
        Candice Edelbaum Bleich ("the Spouse") was the named beneficiary of the policy and has made
        claim for the death proceeds under the policy.

\*      A good faith dispute has arisen concerning representations in the application for the Policy. The
        Spouse and the Company wish to resolve this dispute in accordance with the terms and provisions
        set forth in this Rescission Agreement.

## Agreement and Release

In consideration of the mutual promises set forth below, the Spouse and the Company agree as follows:

1.      The Policy is hereby rescinded and is void as if it had never existed.

2.      The Spouse acknowledges receipt of the sum of Thirteen Thousand Three Hundred Fifteen
        Dollars and 85/00 Cents ($13,315.85) from the Company.

3.      Upon receipt of a properly signed and dated original of this Rescission Agreement, with no
        alterations, the Company shall dismiss with prejudice, and without costs to the Spouse, any court
        action that has been filed to rescind the Policy.

4.      The Spouse agrees to keep strictly confidential the amount of this settlement and all of the terms
        of this Rescission Agreement, except as required for tax return preparation purposes
        and except as required by law

5.      In further consideration of the foregoing, Candice Edelbaum Bleich, on behalf of herself and all
        who may claim by or through her, does hereby release and forever discharge each and all of the
        persons and entities described below as "Persons and Entities Released" from each and all of the
        claims described below as "Claims Released."

        **Persons and Entities Released**: Allianz Life Insurance Company of North America and its
        Parent Companies, subsidiaries, affiliates, predecessors and successors in interest, transferees,
        assignees, reinsurers; and their officers, agents, contractors, employees, directors; and all other
        related persons and entities.

        **Claims Released:** The persons and entities described above as "Persons and Entities Released"
        are released from any and all liability whatsoever, including claims for insurance benefits and all
        other claims, suits, demands and causes of action of any nature, whether known or unknown,
        which Candice Edelbaum Bleich has had, now has, or may ever claim to have, arising from,
        arising under, or in any way relating to the Policy, except to enforce the written terms of this
        Rescission Agreement.

In further consideration of the foregoing promises, the Spouse and the Company agree, on behalf of themselves and all who may claim by or through them or either of them:

A.    That the foregoing Agreement covers all injuries, claims and damages, as well as any and all claims for interest, costs or attorney fees arising therefrom, whether known or not, or which may hereafter appear or develop arising from the matters above referred to.

B.    That this Rescission Agreement is executed as a compromise settlement of a disputed claim, liability for which is expressly denied by the parties released, and that the giving of the above consideration does not constitute an admission of liability on the part of any person or entity.

C.    That they are executing this Rescission Agreement solely in reliance upon their own knowledge, belief and judgment, and not in reliance upon any representation by or on behalf of the other party.

D.    That each of them has read the entirety of this Rescission Agreement, fully understands its terms and its legal significance, and signs this Rescission Agreement freely and voluntarily.

E.    That the person signing this agreement on behalf of the Company is duly authorized to do so.

F.    That this Rescission Agreement shall be binding on and inure to the benefit of the beneficiaries, heirs, executors, administrators, dependents, wards, assigns, successors in interest, affiliates, subsidiaries, directors, agents, contractors and employees of each of the parties.

G.    That this Rescission Agreement is the entire agreement between the parties with regard to resolving their dispute, and no promises for any other or further consideration have been made by anyone.

H.    That this Rescission Agreement will be signed in two counterparts, each of which will have full force and effect.

**THIS AGREEMENT AND RELEASE WILL BE LEGALLY BINDING WHEN SIGNED. IF YOU DO NOT FULLY UNDERSTAND ITS LEGAL SIGNIFICANCE, CONSULT WITH A LEGAL PROFESSIONAL BEFORE SIGNING.**

_____          _____
Candice Edelbaum Bleich, Spouse                  Date


ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA


By:_____          _____
                                                                          Date


Its:_____

# EXHIBIT H

MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff, Allianz Life Insurance Company of North America

By:

Steven P. Del Mauro

|  |  |  |
|---|---|---|
| ALLIANZ LIFE INSURANCE | : | UNITED STATES DISTRICT COURT |
| COMPANY OF NORTH AMERICA, | : | FOR THE DISTRICT OF NEW JERSEY |
|  | : |  |
|  | : | CIVIL ACTION NO. |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| THE ESTATE OF AUSTIN BLEICH | : |  |
| AND CANDICE EDELBAUM BLEICH, | : |  |
|  | : |  |
| Defendants. | : |  |

## CIVIL ACTION – COMPLAINT

Allianz Life Insurance Company of North America ("Allianz"), maintaining its principal place of business located at P.O. Box 59060, Minneapolis, Minnesota 55459-0060 by way of complaint against the Estate of Austin Bleich ("Estate") and Candice Edelbaum Bleich ("Bleich"), jointly, severally or in the alternative, alleges and says:

### JURISDICTION

1. Allianz is an insurance corporation of, and maintains its principal place of business in, the State of Minnesota and is a citizen of the State of Minnesota within the meaning and intent of 28 U.S.C. §1332.

2. Austin Bleich, deceased ("Decedent"), maintained a primary residence located at

15 Kensington Court, Tenafly, New Jersey 07670. At the time of the Decedent's death, the Decedent was a citizen of the State of New Jersey within the meaning and intent of 28 U.S.C. §1332.

3.    Bleich maintains a primary residence located at 15 Kensington Court, Tenafly, New Jersey 07670 and is a citizen of the State of New Jersey within the meaning and intent of 28 U.S.C. §1332.

4.    The amount in controversy between the parties exceeds the sum of $75,000.00, exclusive of interest and costs of suit.

5.    This court maintains original jurisdiction based on diversity of citizenship of the within parties pursuant to 28 U.S.C. §1332.

6.    This action has been properly venued in this District Court pursuant to 28 U.S.C. §1391.

## FIRST COUNT

7.    Allianz is, and at all times relevant has been, in the business of underwriting policies of life insurance and is authorized to transact the business of insurance in the State of New Jersey.

8.    On September 30, 2005, the Decedent executed an Application, Part I, seeking the issuance of a policy of life insurance bearing policy no. 60012691. The Application, Part I, seeking the issuance of a policy of life insurance is fully incorporated herein by reference as if set forth at length.

9.    On October 17, 2005, the Decedent executed the Application, Part II, Answers to Medical Examiner seeking the issuance of a policy of life insurance bearing policy no. 60012691. The Application, Part II, Answers to Medical Examiner is fully incorporated herein

2

by reference as thought set forth at length.

10.     On October 19, 2005, the Decedent completed the telephone application part of the Application, which the Decedent executed on November 22, 2005, seeking the issuance of a policy of life insurance bearing policy no. 60012691. The telephone part of the application is fully incorporated herein by reference as if set forth at length.

11.     On November 22, 2005, the Decedent executed the Amendment to Application seeking issuance of a policy of life insurance bearing policy no. 60012691. The Amendment to Application is fully incorporated herein by reference as if set forth at length.

12.     In executing the insurance applications, Decedent knew he was required to provide honest, truthful and accurate answers to the questions present on the insurance applications.

13.     In executing the insurance applications, the Decedent knew that Allianz would rely upon the answers recorded on the insurance applications in determining whether the Decedent was insurable and qualified for the policy applied for.

14.     In executing the insurance applications seeking the issuance of the policy of life insurance, the Decedent knew that he may be subject to civil and/or criminal penalties in the event he knowingly made false statements in order to obtain an insurance policy.

15.     In executing the insurance applications, the Decedent knew he was required to immediately inform and advise Allianz of any material change in his health from that represented on the insurance applications during the underwriting of the policy of life insurance applied for and prior to its issuance, delivery and the requisite premium payment made.

16.     In executing the Application, Part I, the Decedent provided the following answers to the questions contained therein, to wit:

3

9.   Medical History

1.   Has the proposed insured received treatment or advice from a member of the medical profession for heart disease, kidney or liver disease, diabetes, stroke, dizziness, nervous or mental disorder, cancer or tumor?   NO

\*   \*   \*

3.   Within the past 12 months, has the proposed insured been hospitalized or been advised by a member of the medical profession that he/she needs hospitalization, a surgical procedure or diagnostic test for any reason (other than normal pregnancy or well-baby care)?   NO

If "YES" to questions number 2 or 3, provide details below.

17.   In executing the Application, Part I, the Decedent expressly represented, acknowledged and agreed:

Agreement and permission

I understand that the complete application consists of my written answers to the questions in this application and the answers to the questions in the subsequent phone application. Further, I agree to answer the questions in the subsequent phone application completely and truthfully. I am aware that the Company will rely on these answers and that if my answers are not complete and true, my policy may not be valid. I will review my phone application and notify the Company of any discrepancies.... I agree that any insurance approved by the Company for issuance as a result of this application shall be considered in force only when, during my lifetime and continued insurability, a policy is issued by the Company, said policy is received and accepted by me, and the first premium has been paid...

18.   In executing the Application, Part II, Answers to Medical Examiner, the Decedent provided the following answers to the questions contained therein, to wit:

Have you ever had or been told you had or consulted a physician or practitioner for:

\*   \*   \*

4

G.    Ulcers, colitis, jauntis, hernia, any disease of the
gastrointestinal system including the stomach, intestines, liver,
gallbladder, pancreas or esophagus?
     **YES**

\*  \*  \*

L.    Cancer, tumor or growth of any kind?           **YES**

\*  \*  \*

Have you ever had or been advised to have any surgical operation,
treatment or test; are you using any medication or drugs?   **NO**

\*  \*  \*

Have you ever had an X-ray, electrocardiogram, or other medical
test?                                                **YES**

Have you within the last ten years:

A.    Had any illness, disease, or injury that is not included in
your other answers?                                  **NO**

B.    Consulted or been examined or treated by any physician or
practioner not named in connection with your other
answers?                                             **NO**

19.    Having answered "YES" to the questions noted above, Decedent represented that

he had a "hernia" about 4 years and "Basel Cell" cancer.

20.    Through and by virtue of the execution of the Application, Part II, Answers to

Medical Examiner, Decedent represented, acknowledged and agreed:

I hereby declare that, to the best of my knowledge and belief, the
information given above is correctly recorded, complete and true,
and I agree that the Company believing it to be true, shall rely and
act upon it accordingly.

21.    In executing the telephone application, Decedent provided the following answers

to the questions contained therein, to wit:

1.    Do you have a personal physician?           **YES**

5

1a    If "yes": Name, address and phone number of your personal physician: **Dr. Leonard Raifman -1000 Park Avenue, New York, NY 10028 – phone #212-734-8821**

1b    Date of last visit: **9 months ago**

1c    Please provide reason consulted: **annual checkup**

1d    Was any treatment, including medications, given?   **NONE**

1e    What is your current status of this visit: (i.e. all test results, normal, complete recovery, still on meds)?   **Normal results**

1f    Was any referral made?                    **NONE**

1g    Are any follow-up visits required?              **annually**

*    *    *

3    WITHIN THE PAST FIVE YEARS HAVE YOU:

3a    Consulted, or had any checkup, or physical consultation by any other medical professional (including chiropractors, homeopaths, osteopaths, psychologists, or ophthalmologists?   **YES**

3b    Had a diagnostic test included but not limited to imaging, EKG or laboratory tests?                    **NO**

3c    Been a patient in a hospital, clinic, or sanitarium?    **NO**

3d    Had or been advised to have a surgical operation?    **NO**

*    *    *

4    HAVE YOU RECEIVED MEDICAL ADVICE OR HAS TREATMENT BEEN RECOMMENDED OR RECEIVED FOR:

*    *    *

4ab    Any disease or abnormality of the pancreas?      **NO**

*    *    *

4au    Any disease or abnormality of the skin?        **YES**

6

4av    Any cancer or tumor?                              NO

\*   \*   \*

6.    In the past ten years, have you been treated or diagnosed
with any other medical conditions not previously
disclosed?                                              NO

\*   \*   \*

22.    Having answered "Yes" to question 3a, the Decedent represented that he

consulted and was treated by a physician two years ago for a colonoscopy, with good results and

that four years ago the Decedent underwent hernia surgery.  In addition, the Decedent

represented that he was diagnosed with Basil Cell Carcinoma which was removed from his back,

with good results.

23.    Through and by virtue of the execution of the telephone application, the Decedent

represented, acknowledged and agreed:

> Please review the information you provided us in this Telephone
> Application very carefully.  If any of the information is not correct,
> please advise the Company immediately.  If you do not advise the
> Company of any incorrect information within the 30 day right to
> return period stated on the front page of your policy, the accuracy
> of the information you provided will be deemed affirmed by you.
>
> I understand that the complete application consists of my answers
> to the questions in this Telephone Application and my written
> answers to the questions in the initial application. I am aware that
> the company will rely on these answers and that if my answers are
> not complete and true, pursuant to the Contestability provision of
> the policy to which this application is attached, the policy may not
> be valid.

24.    On the basis of the statements and representations contained in the insurance

applications, and in reliance upon the Decedent's complete candor, honesty and openness in

disclosing information in response to the questions present on the applications, Allianz approved

the issuance of a policy of life insurance bearing policy number 60012691 which contained an

initial death benefit of $1.3 million.

25.   The policy of life insurance was delivered to the Decedent on November 22, 2005, at which time the Decedent executed an Amendment of Application, Policy Delivery Receipt and paid the initial premium for the policy.

26.   Through and by virtue of the execution of the amendment to application, the Decedent represented, acknowledged and agreed:

           *   *   *

> Since the date of the original application of this policy, the proposed insured(s) and any family members proposed for insurance in the application: (a) have not applied for insurance which was declined, postponed or modified; and (b) have no application for insurance pending with another company; and (c) have not suffered an illness or injury; and (d) have not consulted or been examined by a physician or practioner; and (e) have not changed occupations;

           *   *   *

> **I AGREE** that any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

27.   The policy of life insurance provides, in pertinent part:

**Contestability.**

> This policy and any attached Riders or Endorsements are issued based on the information you provided in the application. Any misrepresentations on the application or application for Reinstatement may cause this policy to be voided or rescinded, or a claim to be denied. After this policy and any attached Riders or Endorsements have been in effect during the Insured's lifetime for a period of two years from the Policy Date or from the date of our approval of the application for Reinstatement, this policy shall become incontestable as to a misstatement made in the application or application for Reinstatement. The two year Contestability period does not apply to any Rider providing benefits specifically for disability or death by accident.

8

28.     On September 21, 2007, and within the contestable period of the policy of life insurance, the Decedent expired due to pancreatic cancer.

29.     On October 7, 2007, Bleich executed a Claimant's Statement seeking payment of the death benefit under the policy of life insurance as a consequence of the Decedent's death.

30.     During an investigation of the death claim which ensued, Allianz discovered, for the first time, that the representations and statements made by the Decedent in response to the questions present on the insurance' applications were materially false; that the Decedent knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed to accurately, honestly and truthfully answer and disclose material information in response to the questions present on the insurance applications, which, if disclosed on the insurance applications and/or prior to the delivery, acceptance and payment of the required premium for the policy of life insurance, would have caused the non-issuance of the policy of life insurance as applied for by Allianz.

31.     Specifically, by way of illustration only, the Decedent knowingly and intentionally made material misstatements of fact, failed; refused and omitted to disclose material facts; and otherwise failed to disclose to Allianz on the insurance applications, and during the underwriting thereof, that:

>        a.      The Decedent ,was examined, consulted and treated by Leonard I. Raifman, M.D., who recommended that the Decedent undergo CAT scan of the abdomen and pelvis.
>
>        b.      On November 7, 2005, the Decedent underwent a CAT scan of the abdomen and pelvis which was highly suspicious for pancreatic mass.
>
>        c.      The Decedent was referred to Franklin E. Kasmin, M.D., and on November 14, 2005, the Decedent underwent endoscopic ultrasound at the Beth Israel Medical Center, with fine needle

aspiration of the pancreas.

d.     On November 15, 2005, Dr. Kasmin corresponded with Dr. Raifman at which time he advised:

> Mr. Bleich underwent an endoscopic ultrasound at Beth Israel Medical Center on November 14, 2005. The neck of the pancreas was diffusely hypo echoic, consistent with a mass. The more proximal pancreatic duct was markedly dilated and the tissue in the body and tail was diffusely hypo echoic and abnormal. Multiple biopsies were taken of the region of the abnormality in the neck of the gland. Early evaluation by the cytopathology technician demonstrated much debris was in the sample, but, hopefully, we will have a more definitive answer after from the biopsies after they are reviewed by the cytopathologist.

> Mr. Bleich appears to have an ominous lesion in the neck of the gland, and, hopefully, today's biopsies will be useful. If not, another attempt at biopsy using ERCP and brush cytology across the pancreatic duct may be of use...

e.     On November 18, 2005, the Decedent underwent a CAT scan of the abdomen which revealed, "Mass at the pancreatic body and neck with vascular encasement as above. Findings are most consistent with neoplasm, presumably pancreatic endocarcinoma.

32.     On January 31, 2008, Allianz formally declared the rescission, *ab initio*, of the policy of life insurance and tendered a check representing the return of premiums theretofore paid under the policy of life insurance.

33.     Allianz has no adequate remedy at law and therefore seeks that the policy of life insurance bearing policy number 60012691 be declared null and void and rescinded, *ab initio*.

WHEREFORE Allianz demands judgment against the Defendants, and each of them, for relief more particularly described as follows:

a     An order declaring and adjudging the policy of life insurance bearing policy number 60012691 which insured the life of the Decedent to be null and void and rescinded, *ab*

*initio*; and

     b.     An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the court deems equitable and just.

## SECOND COUNT

     34.     Allianz repeats and realleges each allegation contained in paragraphs 1 through 33, inclusive, as if the same were fully set forth at length herein.

     35.     Decedent knowingly, negligently, and/or innocently made material misstatements of fact; failed to disclose material facts in response to questions present on the insurance applications; and otherwise failed, refused and omitted to disclose and inform Allianz on the insurance applications and during the underwriting of the policy of life insurance, of the material facts as aforesaid.

     36.     Allianz has no adequate remedy at law and therefore seeks that the policy of life insurance bearing policy number 60012691 be declared null and void and rescinded, *ab initio*.

     **WHEREFORE** Allianz demands judgment against the Defendants, and each of them, for relief more particularly described as follows:

     a.     An order declaring and adjudging the policy of life insurance bearing policy number 60012691 which insured the life of the Decedent to be null and void and rescinded, *ab initio*; and

     b.     An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the court deems equitable and just.

## THIRD COUNT

     37.     Allianz repeats and realleges each allegation contained in paragraphs 1 through 36, inclusive, as if the same were fully set forth at length herein.

38.    Allianz issued the policy of life insurance bearing policy number 60012691 pursuant to, and in accordance with, a misstatement of fact all as aforesaid.

39.    Allianz has no adequate remedy at law and therefore seeks that the policy of life insurance bearing policy number 60012691 be declared null and void and rescinded, *ab initio*.

**WHEREFORE** Allianz demands judgment against the Defendants, and each of them, for relief more particularly described as follows:

a.    An order declaring and adjudging the policy of life insurance bearing policy number 60012691 which insured the life of the Decedent to be null and void and rescinded, *ab initio*; and

b.    An order awarding prejudgment interest, post judgment interest, cost of suit, reasonable attorney fees and such other relief as the court deems equitable and just.

## FOURTH COUNT

40.    Allianz repeats and realleges each allegation contained in paragraphs 1 through 39, inclusive, as if the same were fully set forth at length herein.

41.    The policy of life insurance in the section entitled **THE ENTIRE CONTRACT** provides, in pertinent part:

> We have issued this policy in consideration of the application and the initial premium payment. A copy of the application is attached and is a part of this policy.   This policy, any attached Endorsements, and any attached Riders, the application and any Reinstatement application together are the Entire Contract   All statements made by or for the Insured are considered representations and not warranties. No statements other than those contained in any attached application will be used to void the contract or to defend a claim.

42.   Annexed to the policy of life insurance was the insurance applications, including

Part I, which provides in pertinent part:

> **Agreement and permission**
>
> **I understand that the complete application consists of my written answers to the questions in this application and the answers to the questions in the subsequent phone application. Further, I agree to answer the questions in the subsequent phone application completely and truthfully. I am aware that the Company will rely on these answers and that if my answers are not complete and true, my policy may not be valid. I will review my phone application and notify the Company of any discrepancies.... I agree that any** insurance approved by the Company for issuance as a result of this application shall be considered in force only when, during my lifetime and continued insurability, a policy is issued by the Company, said policy is received and accepted by me, and the first premium has been paid...

43.   The effective date of coverage under and pursuant to the policy of life insurance

bearing policy number 60012691 was expressly made subject to the conditions precedent, to wit:

that the policy is issued, received and accepted, and the first premium paid, during the

Decedent's lifetime and continued insurability.

44.   On the date the policy of life insurance was issued, received and accepted by the

Decedent, and the first premium had been paid, the Decedent was not insurable as aforesaid.

45.   On the date the policy of life insurance was received and accepted by the

Decedent, and the first premium had been paid, there had been a substantial and material change

in the health of the Decedent that changed the answers to the questions contained in the

application and rendered the Decedent uninsurable.

13

46.    The Decedent failed to satisfy the conditions precedent for coverage to be effective under the policy of life insurance bearing policy number 60012691.

47.    Allianz has no adequate remedy at law and therefore seeks that the terms and provisions contained in the policy of life insurance pertaining to the conditions precedent to the effectiveness of the policy be specifically enforced.

WHEREFORE Allianz demands judgment against the Defendants, and each of them, for relief more particularly described as follows:

a.    An order specifically enforcing the conditions precedent to the effectiveness of the policy of life insurance bearing policy number 60012691; and

b.    An order declaring and adjudging that the policy of life insurance bearing policy number 60012691 was and is not effective given the failure of the Decedent to satisfy the conditions precedent to the effectiveness of coverage thereby rendering the policy null and void and of no force and effect; and

c.    An order awarding pre-judgment interest, post-judgment interest, costs of suit and reasonable attorney fees; and

d    An order awarding such other relief as the court deems equitable and just

## FIFTH COUNT

48.    Allianz repeats and realleges each allegation contained in paragraphs 1 through 47, inclusive, as if the same were fully set forth at length herein.

49.    The Decedent was at all times relevant to the execution and submission of the applications seeking the issuance of the policy of life insurance bearing policy number 60012691 under a duty of honesty, good faith and fair dealing to immediately and forthwith advise Allianz of any change in his health from that represented in the applications which may occur at any time

14

prior to the issuance, delivery and acceptance of the policy of life insurance.

50.     The Decedent intentionally, willfully and/or negligently failed, refused and/or omitted to disclose, inform and/or otherwise advise Allianz that his health changed from that represented on the applications prior to the issuance, delivery and acceptance of the policy of life insurance.

51.     As a direct and proximate result of the Decedent's breach of the duties of honesty, good faith and fair dealing, Allianz issued and caused the delivery of the policy of life insurance bearing policy number 60012691.

52.     Allianz has no adequate remedy at law and therefore seeks that the policy of life insurance bearing policy number 60012691 issued to the Decedent be declared null and void and rescinded, *ab initio*.

53.     In the alternative, Allianz has no adequate remedy at law and therefore seeks that the terms and provisions of the policy of life insurance pertaining to the conditions precedent to the effectiveness of coverage be specifically enforced.

WHEREFORE, Allianz demands judgment against the defendants, and each of them, for relief more particularly described as follows:

a.     An order specifically enforcing the conditions precedent to the effectiveness of the policy of life insurance bearing policy number 60012691; and

b     An order declaring and adjudging that the policy of life insurance bearing policy number 60012691 was and is not effective given the failure of the Decedent to satisfy the conditions precedent to the effectiveness of coverage thereby rendering the policy null and void and of no force and effect; and

c.     An order rescinding, *ab initio*, the policy of life insurance bearing policy number

60012691 and declaring the same null and void; and

    d.    An order awarding pre-judgment interest, post-judgment interest, costs of suit and reasonable attorney fees; and

    e.    an order awarding such other relief as the court deems equitable and just.

        **McElroy, Deutsch, Mulvaney & Carpenter, LLP**
        Attorneys for Plaintiff,
        Allianz Life Insurance Company of North America

Date: February 5, 2008    By: _____
               Steven P. Del Mauro

# EXHIBIT I

:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----------------------------------------------------------X

NORMA CANDICE EDELBAUM,

Civil Case No :

**08 CV 02505**

**JUDGE DANIELS**

                              Plaintiff,

-against-

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                              Defendant.

----------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

RECEIVE

MAR 12 2008

U.S.D.C. S.D. N.Y.
CASHIER'S

PLAINTIFF NORMA CANDICE EDELBAUM by her attorney DAVID A. ZELMAN,

Esq., for her COMPLAINT, alleges upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1.   This is a contract action in which PLAINTIFF NORMA CANDICE

     EDELBAUM (hereinafter " EDELBAUM") seeks damages for breach of an

     Insurance Agreement with defendant insurer ALLIANZ LIFE INSURANCE

     COMPANY OF NORTH AMERICA (hereinafter "ALLIANZ.")  On or about

     November 15, 2005, ALLIANZ issued a term life insurance policy number

     60012691 (hereinafter, "Insurance Agreement"), to Austin Bleich (hereinafter

     "DECEDENT".)  While the Insurance Agreement was in effect and on September

     21, 2007, DECEDENT died.  Shortly thereafter, a claim was made to ALLIANZ

     for the proceeds of the Insurance Agreement.  On or about January 18, 2008,

     ALLIANZ issued a letter refusing to abide by the terms of the Insurance

     Agreement.  Plaintiff seeks the specified amount of the Insurance Agreement,

1

costs, expenses, interest and attorneys fees and other damages incurred by reason of ALLIANZ's refusal to honor the Insurance Agreement.

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1332(a) which provides for original jurisdiction in this court of all civil disputes between citizens of different states where the amount in controversy is in excess of $75,000. This Court has pendant jurisdiction over PLAINTIFF's state law claim.

## III. PARTIES

3. EDELBAUM and DECEDENT at all times resided at 150 West 96th Street, Apt. 9D, New York, New York, 10025.

4. Defendant ALLIANZ is a foreign corporation with offices at 5701 Golden Hills Drive Minneapolis, Minnesota 55416-1297 and a New York City office at One Chase Manhattan Plaza, 38th Floor, New York, NY 10005.

## IV. FACTS

5. Effective November 15, 2005, ALLIANZ issued DECEDENT a term life insurance agreement with a specified amount of coverage as $1,300,000.00. (Hereinafter "Specified Amount").

6. The Insurance Agreement was delivered to DECEDENT on November 22, 2005 with a policy effective date of November 15, 2005 with full coverage in effect until the termination date of November 15, 2036.

7. EDELBAUM, the spouse of DECEDENT, was and is the named beneficiary under the Insurance Agreement.

2

8.    On or about September 21, 2007, DECEDENT died.

9.    On September 21, 2007, the Insurance Agreement was in full force and effect and
      all premiums had been paid.

10.   EDELBAUM has demanded and continues to demand that ALLIANZ honor the
      Insurance Agreement and pay the specified amount due to her under the terms of
      the Insurance Agreement, however, ALLIANZ has refused said payment.

10.   DECEDENT and EDELBAUM have performed all the obligations required of
      them under the terms and conditions of the Insurance Agreement.

### V. FIRST CAUSE OF ACTION
#### Breach of Contract

11.   Paragraphs 1 through 10 of this complaint are hereby realleged and incorporated
      by reference herein.

12.   That a valid contract existed between ALLIANZ, DECEDENT and EDELBAUM
      and was in full force and effect on September 21, 2007.

13.   That under the terms of that contract, ALLIANZ was obligated to pay the
      specified amount to EDELBAUM upon the death of DECEDENT.

14.   That ALLIANZ has refused to honor the terms of its Insurance Agreement.

15.   That EDELBAUM is entitled to the specified amount of the Insurance Agreement
      as well as other economic damages stemming from ALLIANZ's refusal to honor
      the Insurance Agreement.

**INJURY AND DAMAGES**

As a result of the acts and conduct complained of herein, EDELBAUM has suffered and

3

will continue to suffer the loss of the specified amount. Plaintiff has also suffered

pecuniary losses such as attorneys fees, loss of interest and other costs and expenses.

**WHEREFORE**, EDELBAUM respectfully requests that judgment be entered:

1.  Awarding EDELBAUM the specified amount of $1,300,000.00

2.  Awarding EDELBAUM interest, costs and expenses incurred as a result of

    defendant's refusal to honor its Insurance Agreement.

3.  Awarding EDELBAUM interest from September 21, 2007; and

4.  Awarding EDELBAUM reasonable attorney's fees; and

5.  Granting such other and further relief as to this Court seems proper.

DATED: Brooklyn, New York
       March 11, 2008

_____

DAVID A. ZELMAN, ESQ.
(dz 8578)
612 Eastern Parkway
Brooklyn, New York
11225 - (718)604-3072

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                Civil Case No.:
-----------------------------------------------------------X
NORMA CANDICE EDELBAUM,

                              Plaintiff,         :

          -against-

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                              Defendant.
-----------------------------------------------------------X

## COMPLAINT

LAW OFFICE OF DAVID A. ZELMAN
ATTORNEY FOR PLAINTIFFS
612 Eastern Parkway
Brooklyn, NY 11225
Tel: 718-604-3072
Fax: 718-604-3074

# EXHIBIT J

# McElroy, Deutsch, Mulvaney & Carpenter, LLP

ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

STEVEN P. DEL MAURO
Direct Dial: (973) 425-8206
sdelmauro@mdmc-law.com

March 31, 2008

David A. Zelman, Esq.
612 Eastern Parkway
Brooklyn, NY 11225

Re:    Allianz Life Insurance Company of North America v. The Estate of Austin
Bleich, et al.
Civil Action No.: 08-cv-00668

Dear Mr. Zelman:

We have now had an opportunity to review this matter in further detail. As you are aware, Allianz was the first to file a civil action in the United States District Court, District of New Jersey, with a complaint filed February 5, 2008. New Jersey is the appropriate forum as the Decedent represented on the application that he resided in the State of New Jersey. The application was taken and executed in the State of New Jersey and the policy of life insurance issued by Allianz was issued in accordance with the laws of the State of New Jersey.

We would therefore ask that you voluntarily dismiss, without prejudice, the civil action you commenced in the United States District Court, Southern District of New York. You can assert all of your claims contained in the lawsuit you filed as a counterclaim in response to the complaint pending in the District of New Jersey.

In order to avoid further cost and expense, we would appreciate your kind courtesy in advising whether you will voluntarily dismiss the civil action.

Thank you for your kind courtesy and cooperation in this regard.

Very truly yours,

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

Steven P. Del Mauro

SPD/jaa

NEWARK, NEW JERSEY    RIDGEWOOD, NEW JERSEY    NEW YORK, NEW YORK    DENVER, COLORADO    PHILADELPHIA, PENNSYLVANIA

MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Defendant, Allianz Life Insurance Company of North America

By: _____
　　　　Steven P. Del Mauro, Esq.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NORMA CANDICE EDELBAUM, | : | |
| | : | |
| | : | **CIVIL ACTION NO. 08-cv-02505** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **ALLIANZ LIFE INSURANCE** | : | |
| **COMPANY OF NORTH AMERICA** | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## CIVIL ACTION – LEGAL MEMORANDUM ON BEHALF OF ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER THIS ACTION TO THE DISTRICT OF NEW JERSEY

---

Steven P. Del Mauro
Of counsel and on the brief.

## **TABLE OF CONTENTS**

PREFATORY STATEMENT ............................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .........................................2

LEGAL ARGUMENT ..................................................................................................13

   POINT I .....................................................................................................................13

   THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT PREJUDICE
   BECAUSE EDELBAUM'S CLAIMS SHOULD BE LITIGATED IN THE
   DISTRICT OF NEW JERSEY WHERE THE FIRST COMPLAINT RELATED
   TO THIS DISPUTE WAS FILED ...............................................................................13

      A.   The First to File Rule...........................................................................13

      B.   Factors Considered in a Motion to Dismiss or Transfer under § 1404(a) ...........15

CONCLUSION ...........................................................................................................21

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

<u>Continental Grain Co. v. Barge FBL-585</u>,
    364 U.S. 19, 80 S. Ct. 1479, 4 L. Ed. 2d 1540 (1960)...............................................14

<u>Elite Parfums, Inc. v. Rivera</u>,
    872 F. Supp. 1269.............................................................................................................16

<u>Fairfax Dental Ltd. v. S.J. Filhol Ltd.</u>,
    645 F. Supp. 89 (E.D.N.Y. 1986) .............................................................................17, 20

<u>Ferens v. John Deere Co.</u>,
    494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990).........................................14

<u>First City Nat. Bank and Trust Co. v. Simmons</u>,
    878 F.2d 76 (2d Cir. 1989) .....................................................................................14, 15

<u>Fort Howard Paper Co. v. William D. Witter, Inc.</u>,
    787 F.2d 784 (2d Cir. 1986) ..........................................................................................14

<u>Hernandez v. Graebel Van Lines</u>,
    761 F. Supp. 983 (E.D.N.Y. 1991) ..........................................................................16, 17

<u>In re Eastern Dist. Repetitive Stress Injury Litig.</u>,
    850 F. Supp. 188 (E.D.N.Y. 1994) ..........................................................................16, 17

<u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>,
    342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 2d 200 (1952)..................................................15

<u>Motion Picture Lab. Technicians Loc. 708 v. McGregor & Werner, Inc.</u>,
    804 F.2d 16 (2d Cir. 1986) .............................................................................................14

<u>Ontel Prods., Inc. v. Project Strategies Corp.</u>,
    899 F. Supp. 1144...........................................................................................................15

<u>Saminsky v. Occidental Petroleum Corp.</u>,
    373 F. Supp. 257.............................................................................................................17

<u>TM Claims Service v. KLM Royal Dutch Airlines</u>,
    143 F. Supp. 2d. 402.......................................................................................................17

<u>Trippe Mfg. Co. v. American Power Conservation Corp.</u>,
    46 F.3d 624 (7th Cir. 1995) ...........................................................................................14

Wiener v. UnumProvident Corp.,
    2002 WL 31108182, *2 n.1 ..................................................................................19


State Cases

Allstate Ins. Co. v. Stolarz,
    81 N.Y.2d 219 (1993) ...............................................................................18, 19


Federal Statutes

28 U.S.C. § 1404(a) ......................................................................................1, 13, 15


Federal Rules

Fed. R. Civ. P. 45..........................................................................................20

## **PREFATORY STATEMENT**

Defendant Allianz Life Insurance Company of North America ("Allianz") submits this memorandum of law in support of its motion to dismiss the Complaint filed by Norma Candice Edelbaum ("Edelbaum") or, in the alternative, transfer the Complaint to the District of New Jersey where Allianz previously filed its Complaint involving the same factual circumstances as set forth in Edelbaum's Complaint.

Edelbaum's Complaint in this district court is unnecessarily repetitive of the same issues and operative facts which are already the subject of Allianz's lawsuit in the District of New Jersey. Both this action and Allianz's earlier-filed Complaint in the District of New Jersey concern the same policy of term life insurance in the amount of $1.3 million bearing policy no. 60012691 ("the Policy") issued by Allianz to Austin Bleich ("Decedent") on November 22, 2005. Decedent executed the application in New Jersey, represented that he was a New Jersey resident and underwent a required paramedical examination in New Jersey. Based on Decedent's responses to questions contained in the application for insurance, Allianz issued the Policy pursuant to and in accordance with the laws of the State of New Jersey. Therefore, Allianz properly filed its five-count Complaint seeking to rescind the Policy in the District of New Jersey. Edelbaum's Complaint filed in the Southern District of New York is needlessly duplicative of Allianz's earlier-filed action.

As Allianz was the first to file a complaint concerning its rights under the Policy, the Court should dismiss Edelbaum's Complaint, without prejudice, and allow Edelbaum to proceed by way of counterclaim in the District of New Jersey action. Dismissal is warranted under 28 U.S.C. § 1404(a) and the relevant law within the Second Circuit which clearly establishes that where there are two actions proceeding in different district courts and those actions concern the

same locus of operative facts, parties and issues, the claims should be litigated in the district where the first action was filed. The "first to file" rule is based on the inherently fair principle that in the interests of the convenience of all parties, witnesses and judicial economy, claims such as these should be litigated in a single proceeding. Moreover, Allianz's complaint in the District of New Jersey seeks relief not only against Edelbaum, but also against the Estate of the Decedent. If this action is not dismissed or transferred to the District of New Jersey where Allianz filed the first complaint concerning the enforceability of the Policy, then Allianz will be forced to assert causes of action in this Court by way counterclaim which are identical and duplicative of its Complaint filed in the District of New Jersey. Accordingly, Allianz requests that this Court enter an order dismissing Edelbaum's Complaint without prejudice or, in the alternative, order that this matter be transferred to the District of New Jersey so that these related causes of action may be decided in the context of a single proceeding.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Both this matter and Allianz's earlier-filed Complaint in the District of New Jersey concern the same policy of term life insurance issued by Allianz on the life of Decedent. On September 30, 2005, the Decedent executed an Application, Part I, seeking the issuance of a policy of life insurance bearing policy no. 60012691. The Application, Part I, seeking the issuance of a policy of life insurance is fully incorporated herein by reference as if set forth at length. (Del Mauro Certif., at ¶ 3.) In executing the Application, Part I, the Decedent provided the following answers to the questions contained therein, to wit:

9. **Medical History**

1. Has the proposed insured received treatment or advice from a member of the medical profession for heart disease, kidney or liver disease, diabetes, stroke, dizziness, nervous or mental disorder, cancer or tumor? **NO**

2

\*     \*     \*

> 3.     Within the past 12 months, has the proposed insured been hospitalized or been advised by a member of the medical profession that he/she needs hospitalization, a surgical procedure or diagnostic test for any reason (other than normal pregnancy or well-baby care)?    **NO**

> If "YES" to questions number 2 or 3, provide details below.

(Del Mauro Certif., at ¶ 4.)   In executing the Application, Part I, the Decedent expressly represented, acknowledged and agreed:

> **Agreement and permission**
>
> **I understand that the complete application consists of my written answers to the questions in this application and the answers to the questions in the subsequent phone application. Further, I agree to answer the questions in the subsequent phone application completely and truthfully. I am aware that the Company will rely on these answers and that if my answers are not complete and true, my policy may not be valid. I will review my phone application and notify the Company of any discrepancies....** I agree that any insurance approved by the Company for issuance as a result of this application shall be considered in force only when, during my lifetime and continued insurability, a policy is issued by the Company, said policy is received and accepted by me, and the first premium has been paid…

(Del Mauro Certif., at ¶ 5.)    Decedent executed Part I of the application for life insurance in the State of New Jersey and represented that he was a New Jersey resident residing at 15 Kensington Court, Tenafly, New Jersey 07670 as his residence.

Furthermore, On October 17, 2005, Decedent underwent a paramedical examination and executed Part II to the application for life insurance, Answers to Medical Examiner. The examination and the execution of Part II took place at 1 West Ridgewood Avenue, Paramus, New Jersey. The Application, Part II Answers to Medical Examiner is fully incorporated herein

by reference as though set forth at length.  (Del Mauro Certif., at ¶ 7.)  In executing the

Application, Part II, Answers to Medical Examiner, the Decedent provided the following

answers to the questions contained therein, to wit:

> Have you ever had or been told you had or consulted a physician
> or practitioner for:
>
>         *     *     *
>
> G.    Ulcers, colitis, jauntis, hernia, any disease of the
> gastrointestinal system including the stomach, intestines, liver,
> gallbladder, pancreas or esophagus?       **YES**
>
>         *     *     *
>
> L.    Cancer, tumor or growth of any kind?      **YES**
>
>         *     *     *
>
> Have you ever had or been advised to have any surgical operation,
> treatment or test; are you using any medication or drugs?   **NO**
>
>         *     *     *
>
> Have you ever had an X-ray, electrocardiogram, or other medical
> test?       **YES**
>
> Have you within the last ten years:
>
> A.    Had any illness, disease, or injury that is not included in
> your other answers?      **NO**
>
> B.    Consulted or been examined or treated by any physician or
> practitioner not named in connection with your other answers? **NO**

(Del Mauro Certif., at ¶ 8.)  Having answered "YES" to the questions noted above, Decedent

represented that he had a "hernia" about four years and "Basel Cell" cancer.  Through and by

virtue of the execution of the Application, Part II, Answers to Medical Examiner, Decedent

represented, acknowledged and agreed:

> I hereby declare that, to the best of my knowledge and belief, the

information given above is correctly recorded, complete and true, and I agree that the Company believing it to be true, shall rely and act upon it accordingly.

(Del Mauro Certif., at ¶ 10.)  In addition, the paramedical examination during which Decedent

executed Part II of the Application for Life Insurance took place at 1 West Ridgewood Avenue,

Paramus, New Jersey.  (Del Mauro Certif., at ¶ 11.)

Subsequent to completing Part II of the application, Decedent completed the telephone

application part of the Application on October 19, 2005, which the Decedent then signed on

November 22, 2005, seeking the issuance of a policy of life insurance bearing policy no.

60012691.  (Del Mauro Certif., at ¶ 12.)  In executing the telephone application, Decedent

provided the following answers to the questions contained therein, to wit:

1.    Do you have a personal physician?                    **YES**

1a    If "yes":   Name, address and phone number of your personal physician:  **Dr. Leonard Raifman -1000 Park Avenue, New York, NY 10028 – phone #212-734-8821**

1b    Date of last visit:  **9 months ago**

1c    Please provide reason consulted:  **annual checkup**

1d    Was any treatment, including medications, given?   **NONE**

1e    What is your current status of this visit:  (i.e. all test results, normal, complete recovery, still on meds)?   **Normal results**

1f    Was any referral made?                              **NONE**

1g    Are any follow-up visits required?                  **annually**

*        *        *

3     WITHIN THE PAST FIVE YEARS HAVE YOU:

3a    Consulted, or had any checkup, or physical consultation by any other medical professional (including chiropractors, homeopaths, osteopaths, psychologists, or ophthalmologists?

5

**YES**

3b    Had a diagnostic test included but not limited to imaging,
EKG or laboratory tests?                                    **NO**

3c    Been a patient in a hospital, clinic, or sanitarium?    **NO**

3d    Had or been advised to have a surgical operation?    **NO**

\*    \*    \*

4.    HAVE YOU RECEIVED MEDICAL ADVICE OR HAS
TREATMENT BEEN RECOMMENDED OR RECEIVED FOR:

\*    \*    \*

4ab    Any disease or abnormality of the pancreas?    **NO**

\*    \*    \*

4au    Any disease or abnormality of the skin?    **YES**

4av    Any cancer or tumor?    **NO**

\*    \*    \*

6.    In the past ten years, have you been treated or diagnosed
with any other medical conditions not previously disclosed?    **NO**

\*    \*    \*

(Del Mauro Certif., at ¶ 13.)  Having answered "Yes" to question 3a, the Decedent represented

that he consulted and was treated by a physician two years ago for a colonoscopy, with good

results and that four years ago the Decedent underwent hernia surgery.  In addition, the Decedent

represented that he was diagnosed with Basil Cell Carcinoma which was removed from his back,

with good results.

Through and by virtue of the execution of the telephone application, the Decedent

represented, acknowledged and agreed to abide by the following obligations and conditions:

Please review the information you provided us in this Telephone

6

> Application very carefully. If any of the information is not correct,
> please advise the Company immediately. If you do not advise the
> Company of any incorrect information within the 30 day right to
> return period stated on the front page of your policy, the accuracy
> of the information you provided will be deemed affirmed by you.
>
> I understand that the complete application consists of my answers
> to the questions in this Telephone Application and my written
> answers to the questions in the initial application. I am aware that
> the company will rely on these answers and that if my answers are
> not complete and true, pursuant to the Contestability provision of
> the policy to which this application is attached, the policy may not
> be valid.

(Del Mauro Certif., at ¶ 15.)

On November 22, 2005, the Decedent executed the Amendment to Application seeking issuance of a policy of life insurance bearing policy no. 60012691. (Del Mauro Certif., at ¶ 16.) Through and by virtue of the execution of the amendment to application, the Decedent represented, acknowledged and agreed:

> \*        \*        \*
>
> Since the date of the original application of this policy, the
> proposed insured(s) and any family members proposed for
> insurance in the application: (a) have not applied for insurance
> which was declined, postponed or modified; and (b) have no
> application for insurance pending with another company; and (c)
> have not suffered an illness or injury; and (d) have not consulted or
> been examined by a physician or practitioner; and (e) have not
> changed occupations;
>
> \*        \*        \*
>
> **I AGREE** that any person who includes any false or misleading
> information on an application for an insurance policy is subject to
> criminal and civil penalties.

(Del Mauro Certif., at ¶ 17.) On the basis of the statements and representations contained within the insurance application, and in reliance upon the Decedent's complete candor, honesty and openness in disclosing information in response to the questions presented on the application,

Allianz approved the issuance of a policy of life insurance bearing policy #60012691. (Del Mauro Certif., at ¶ 18.) Furthermore, based upon Decedent's representation that he was a New Jersey resident, and on the basis that the application was completed and executed in the State of New Jersey, Allianz issued the policy pursuant to, in accordance with and governed by the laws of the State of New Jersey. (Del Mauro Certif., at ¶ 19.)

On September 21, 2007, and within the contestable period of the policy of life insurance, the Decedent expired due to pancreatic cancer. (Del Mauro Certif., at ¶ 20.) October 7, 2007, Edelbaum executed a Claimant's Statement seeking payment of the death benefit under the policy of life insurance as a consequence of the Decedent's death. (Del Mauro Certif., at ¶ 21.) During an investigation of the death claim which ensued, Allianz discovered, for the first time, that the representations and statements made by the Decedent in response to the questions present on the insurance applications were materially false; that the Decedent knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed to accurately, honestly and truthfully answer and disclose material information in response to the questions present on the insurance applications, which, if disclosed on the insurance applications and/or prior to the delivery, acceptance and payment of the required premium for the policy of life insurance, would have caused the non-issuance of the policy of life insurance as applied for by Allianz. (Del Mauro Certif., at ¶ 22.)

Specifically, by way of illustration only, the Decedent knowingly and intentionally made material misstatements of fact, failed; refused and omitted to disclose material facts; and otherwise failed to disclose to Allianz on the insurance applications, and during the underwriting thereof, that:

> a.    The Decedent was examined, consulted and treated by Leonard I. Raifman, M.D., who recommended that the Decedent

8

undergo CAT scan of the abdomen and pelvis.

b.     On November 7, 2005, the Decedent underwent a CAT scan of the abdomen and pelvis which was highly suspicious for pancreatic mass.

c.     The Decedent was referred to Franklin E. Kasmin, M.D., and on November 14, 2005, the Decedent underwent endoscopic ultrasound at the Beth Israel Medical Center, with fine needle aspiration of the pancreas.

d.     On November 15, 2005, Dr. Kasmin corresponded with Dr. Raifman at which time he advised:

> Mr. Bleich underwent an endoscopic ultrasound at Beth Israel Medical Center on November 14, 2005. The neck of the pancreas was diffusely hypo echoic, consistent with a mass.   The more proximal pancreatic duct was markedly dilated and the tissue in the body and tail was diffusely hypo echoic and abnormal.   Multiple biopsies were taken of the region of the abnormality in the neck of the gland. Early evaluation by the cytopathology technician demonstrated much debris was in the sample, but, hopefully, we will have a more definitive answer after from the biopsies after they are reviewed by the cytopathologist.

> Mr. Bleich appears to have an ominous lesion in the neck of the gland, and, hopefully, today's biopsies will be useful.  If not, another attempt at biopsy using ERCP and brush cytology across the pancreatic duct may be of use…

e.     On November 18, 2005, the Decedent underwent a CAT scan of the abdomen which revealed, "Mass at the pancreatic body and neck with vascular encasement as above. Findings are most consistent with neoplasm, presumably pancreatic endocarcinoma.

(Del Mauro Certif., at ¶ 23.)   As a result of the facts learned during the investigation of Edelbaum's claim, on January 31, 2008, Allianz formally declared the rescission, *ab initio*, of the policy of life insurance and tendered a check representing the return of premiums theretofore

paid under the policy of life insurance. (Del Mauro Certif., at ¶ 24.).

Thereafter, on February 5, 2008, within days of its issuing its correspondence rescinding the policy and tendering a check representing a return of premiums theretofore paid under the Policy, Allianz filed a complaint in the United States Court for the District of New Jersey, Civil Action No. 08-08-cv-00668, against the Estate of Austin Bleich and Candice Edelbaum Bleich asserting causes of action and claims for relief related to material misrepresentations made by Decedent, in connection with the application for the Policy. (Del Mauro Certif., at ¶ 25.) In its complaint, Allianz alleged five causes of actions related to Decedent's failure to fully disclose his medical condition under the terms of the Application. Specially Count I, alleges a cause of action for legal fraud; Count II, states a cause of action for equitable fraud; Count III, sets forth a cause of action based upon mistake of fact; Count IV, seeks to specifically enforce the terms of the policy which require Decedent to truthfully respond to all questions contained within the application as a condition for Decedent to the effectiveness of the policy; and, finally, Count V, states a claim for rescission of the policy based upon material misrepresentations in failing to disclose the changes in his health. (Del Mauro Certif., at ¶ 26.)

Subsequent to Allianz's filing of its Complaint in the District of New Jersey, Edelbaum, filed this Complaint in the Southern District of New York on March 12, 2008, seeking death benefits on the Policy which is the subject of Allianz's Complaint for rescission previously filed in the District of New Jersey. (Del Mauro Certif., at ¶ 27.) The complaint alleges:

> 5.  Effective November 15, 2005, ALLIANZ issued DECEDENT a term life insurance agreement with a specified amount of coverage as $1,300,000.00. (Hereinafter 'Specified Amount').

> 6.  The Insurance Agreement was delivered to DECEDENT on November 22, 2005 with a policy effective date of

November 15, 2005 with full coverage in effect until the termination date of November 15, 2036.

7. EDELBAUM, the spouse of DECEDENT, was and is the named beneficiary under the Insurance Agreement.

8. On or about September 21, 2007, DECEDENT died.

9. On September 21, 2007, the Insurance Agreement was in full force and effect and all premiums had been paid.

10. EDELBAUM has demanded and continues to demand that ALLIANZ honor the Insurance Agreement and pay the specified amount due to her under the terms of the Insurance Agreement, however, ALLIANZ has refused said payment.

11. [sic] DECEDENT and EDELBAUM have performed all the obligations required of them under the terms and conditions of the Insurance Agreement.

(Edelbaum Compl., at ¶¶ 5-11.)

After receiving copy of Edelbaum's Complaint, I wrote to Edelbaum's counsel, Mr. David Zelman, requesting that his office voluntarily dismiss this action, without prejudice, and assert the causes of action and claims for relief against Allianz by way of counterclaim in the earlier field action in the District of New Jersey. (Del Mauro Certif., at ¶ 28.) Mr. Zelman has neither withdrawn his complaint nor provided any explanation as to why this action should not properly be asserted by way of counterclaim in the District of New Jersey. This action and Allianz's Complaint in the District of New Jersey involve the same policy of term life insurance issued to the Decedent and the same set of operative facts concerning the application for and issuance of the Policy. Moreover, if Allianz is unsuccessful in its action in the District of New Jersey, the Policy would be in full force and effect, and Allianz would be required to pay Edelbaum the death benefits she seeks in this separate, duplicative and later-filed action in the Southern District of New York. (Del Mauro Certif., at ¶ 29.)

11

As this action and Allianz's Complaint in the District of New Jersey involve the same policy of term life insurance issued to the Decedent and the same set of operative facts concerning the application for and issuance of the Policy, Allianz therefore filed this motion to dismiss Edelbaum's Complaint without prejudice because the causes of action and claims for relief should properly be interposed as counterclaims in the District of New Jersey. Moreover, if Allianz is unsuccessful in its action in the District of New Jersey, the Policy would be in full force and effect, and Allianz would be required to pay Edelbaum the death benefits she seeks in this separate, duplicative and later-filed action in the Southern District of New York. Based on the above facts and circumstances, Allianz requests that this dismiss the Complaint without prejudice or, in the alternative, order that this matter be transferred to the District of New Jersey.

## LEGAL ARGUMENT

### POINT I

**THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT PREJUDICE BECAUSE EDELBAUM'S CLAIMS SHOULD BE LITIGATED IN THE DISTRICT OF NEW JERSEY WHERE THE FIRST COMPLAINT RELATED TO THIS DISPUTE WAS FILED**

Edelbaum's action in the Southern District of New York against Allianz Life Insurance Company constitutes a needlessly duplicative proceeding of Allianz's previously filed lawsuit within the District of New Jersey. Both lawsuits concern the same insurance policy, the same set of operative facts and the same contested rights pursuant to the terms of the Policy that governs each party's claims. The Second Circuit observes the accepted rule that in such circumstances, all factually and legally related claims should be decided in the context of a single proceeding where the first complaint was filed. Allianz filed the first Complaint in this matter in the District of New Jersey over a month before Edelbaum filed her Complaint in the Southern District of New York. If this action is allowed to proceed, Allianz will have no choice but to assert the exact same causes of action and claims for relief in its District of New Jersey action as a counterclaim and third party complaint in these proceedings. Such a result would lead to unjustified duplication of judicial time and resources. As such, Allianz respectfully submits that Edelbaum's Complaint should be dismissed without prejudice and that Edelbaum should assert any and all causes of action concerning the Policy by way of a counterclaim in the District of New Jersey.

### A.    The First to File Rule

Title 28, United States Code § 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

13

district or division where it might have been brought." Federal courts also adhere to the established principle that "[w]here there are two competing lawsuits, the first suit [filed] should have priority, absent a showing of balance convenience . . . or . . . special circumstances . . . giving priority to the second [action]." Motion Picture Lab. Technicians Loc. 708 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986), *quoting* Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir. 1986). The United States Supreme Court has recognized that permitting two cases involving largely the same set of claims, issues and facts to proceed simultaneously in separate judicial districts is a waste of valuable judicial resources. Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990), *quoting* Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26, 80 S. Ct. 1479, 4 L. Ed. 2d 1540 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that Section 1404(a) was designed to prevent").

In determining whether a transfer is in the interests of convenience and justice, courts follow the "first to file rule." Under this principle, a court faced with a motion to dismiss and transfer will typically transfer a case to the judicial district where an identical or related action was first filed *unless* there is clear "evidence that the [parties'] dispute[s] cannot be fully adjudicated" in the district where the first case was commenced. First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989). Under the first to file doctrine, a court is not limited to simply transferring a later-filed complaint. Where the first to file rule applies, a district court has the inherent power to dismiss the later filed action in deference to the earlier-filed federal proceeding. *See,* Trippe Mfg. Co. v. American Power Conservation Corp., 46 F.3d 624, 629 (7th Cir. 1995), *quoting,* Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180,

183, 72 S. Ct. 219, 96 L. Ed. 2d 200 (1952); *see also* <u>Simmons</u>, <u>supra</u>, 878 F.2d at 79 (affirming

district court's dismissal of the later filed action). Courts review a motion to dismiss based upon

the first to file doctrine using the same set of standards set forth in 28 U.S.C. § 1404(a). *See,*

<u>Ontel Prods., Inc. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995).

Compliance with the first-filed rule constitutes "the least abrasive method of judicial

administration" and serves the interests of judicial economy and convenience of the parties.

<u>Simmons</u>, 878 F.2d at 80.

 In <u>Simmons</u>, the Second Circuit affirmed an order dismissing, without prejudice, the

complaint of First City National Bank ("FCNB") against Simmons and Moody, a co-defendant,

for repayment of promissory notes. <u>Id.</u> at 77. Prior to FCNB filing its complaint in the Southern

District of New York, Simmons and Moody filed related actions in the Western District of

Oklahoma. <u>Id.</u> Simmons and Moody brought a motion to dismiss in the Southern District

arguing, among other things, that as their suit was filed first and involved disputes related to the

same contractual obligations among the same parties, the proper venue to resolve all of the

parties' disputes was in Oklahoma. <u>Id.</u> The district court agreed and FCNB appealed. <u>Id.</u> In its

appeal, FCNB did not argue that it would be particularly inconvenienced or prejudiced by

litigating its claims in the Western District of Oklahoma. Thus, "[t]he balance of conveniences

[did] not overcome the ***presumption*** in favor of allowing the controversy to be adjudicated in the

forum where it was first filed." <u>Id.</u> (Emphasis added).

**B.** **Factors Considered in a Motion to Dismiss or Transfer under § 1404(a)**

 In considering a motion to dismiss or transfer an action to another district court based on

the first to file rule, courts will consider the applicability of several "convenience factors" related

to § 1404(a). *See,* <u>Ontel Prods., Inc.</u>, 899 F. Supp. at 1153.

> The various factors to consider in a 1404(a) motion include, among others, the convenience of the parties and witnesses, ease of access to sources of proof, plaintiffs choice of forum, local interest in the dispute, availability of process to compel unwilling witnesses, and the relative size of the dockets at the contemplated fora. Elite Parfums, Inc. v. Rivera, 872 F. Supp. 1269, 1271 (S.D.N.Y. 1995).

Id.

Although a plaintiff's choice of forum is given considerable weight in a motion to transfer, courts will give less consideration to this factor "when a plaintiff's chosen forum has no connection to the events which gave rise to the claim for relief, plaintiff's choice of forum is a less weighty consideration." In re Eastern Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 194 (E.D.N.Y. 1994); see, e g , Hernandez v. Graebel Van Lines,761 F. Supp. 983, 991 (E.D.N.Y. 1991). In Hernandez, the district court for the Eastern District of New York transferred a negligence action for personal injuries to the Southern District of Florida notwithstanding the plaintiff's choice of forum in New York. Key to the court's decision was that the locus of operative facts in the case related *solely* to the state of Florida where the car accident occurred. Id. at 980-90. The court reasoned, "this is a personal injury action that arose out of a two-vehicle accident that took place in the State of Florida. * * * The *only* locus of operative facts is Florida." Id. at 990. (Emphasis in original).

Courts have also given special attention to the locus of operative facts when presented with a transfer petition for a breach of contract action. *See, e g ,* Int'l Meat Processing Corp. v. P.M. Beef Group, No. 04-2092 (E.D.N.Y. Aug. 8, 2006). In P.M. Beef Group, the plaintiffs alleged that the defendant meat suppliers breached their contract to provide meat for kosher slaughter, processing and packaging at the defendants' Minnesota meat processing plant. Id. The plaintiff brought suit in the Eastern District of New York and the defendants sought a transfer to the District of Minnesota. As in Hernandez, the court considered the locus of

operative facts as central to whether or not to respect the plaintiff's choice of forum. The court concluded that a transfer in that case was not appropriate because the Eastern District of New York had "significant connections to the facts giving rise to the controversy." Id. In particular, the court analyzed the connection between the parties' contractual dealings and the forum. "[T]he product was to be delivered in Brooklyn, NY. Plaintiffs' purchase orders originated in New York, and issues related to overcharging were resolved in New York." Id. Thus, the locus of contract was key to the court's resolution of the motion to transfer.

In analyzing the other factors courts consider in reviewing a motion to transfer, courts consider the convenience of witnesses to be the most significant factor governing the decision to transfer a case. TM Claims Service v. KLM Royal Dutch Airlines, 143 F. Supp. 2d. 402, 405 (S.D.N.Y. 2001); In re Eastern Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 194 (E.D.N.Y. 1994), citing, Saminsky v. Occidental Petroleum Corp., 373 F. Supp. 257, 259 (S.D.N.Y. 1974); see also, Hernandez, 761 F. Supp. at 990. The first to file rule serves the convenience of the parties because witnesses will not be compelled to give testimony in multiple cases related to the same issues. See, Fairfax Dental Ltd. v. S.J. Filhol Ltd., 645 F. Supp. 89, 92 (E.D.N.Y. 1986). In Fairfax Dental, the Eastern District granted a motion to transfer a patent infringement action to the Southern District of New York where a related case was proceeding against another defendant. In considering the convenience of the parties and witnesses the court noted that a transfer would allow the various claims to be litigated in a single forum and thus avoid the need to have witnesses potentially appear to testify in two courts on two separate occasions. Id.

Applying the above standards to this case, Allianz was undeniably the first to file a complaint involving claims related to the policy of life insurance on the life of Decedent when it

17

filed its February 5, 2008, Complaint in the District of New Jersey seeking to rescind the policy

as void *ab initio* because of misrepresentations and material omissions made by Decedent during

the November 2007, application for life insurance. Subsequently, on March 12, 2008, Edelbaum

filed the instant Complaint against Allianz seeking death benefits under the Policy in the amount

of $1.3 million.   A comparison of the two complaints clearly shows the similarity of the

underlying events which serve as the basis for each party's causes of action.  Both complaints

concern a policy of life insurance delivered to Decedent on November 22, 2005.  (Allianz

Compl., at ¶¶ 10-11, 25); (Edelbaum Compl., at ¶¶ 5-6.)  Allianz's Complaint concerns its right

to investigate and contest any claims made within the first two years of the date the Policy was

issued based on misstatements in the application.  (Allianz Compl., at ¶¶ 27-32.)  Allianz argues

that it is not responsible for paying benefits under the policy because the application contains

misstatements and/or omissions of material facts.  Edelbaum, however, claims that the Policy is

fully enforceable and that she, as the named beneficiary, is entitled to benefits under the Policy.

Thus, the parties' separate complaints each concern the rights and remedies available regarding

the Policy of insurance on Decedent's life.

Furthermore, as the locus of operative facts in this case concerns New Jersey, New Jersey

law would apply to the disposition of this case even if this matter were litigated in this district

court.  In determining which state's law applies to a contractual dispute, one of the primary

methods of analysis utilized by New York Courts is the "grouping of contacts" approach.  *See,*

Allstate Ins. Co. v. Stolarz, 81 N.Y.2d 219, 226 (1993).  "Under this approach, the spectrum of

significant contacts – rather than a single possibly fortuitous event – may be considered."  Id.

Under a "grouping of contacts" approach, the Court will consider "the place of contracting,

18

negotiation, and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Id. at 227.

In formulating the factors to consider under the grouping of contacts approach the Court of Appeals adopted the language in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188. Id. at 227. The restatement provides that the five "contacts are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188. The Restatement sets forth five factors that courts consider when applying the grouping of contacts analysis. They are: the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties. In a case analogous to this one, the Southern District of New York, applying a "grouping of contacts" analysis, held that "the relevant inquiry in this choice of law analysis is where plaintiff was employed at the time she purchased the polices." Wiener v. UnumProvident Corp., 2002 WL 31108182, *2 n.1 (S.D.N.Y. Sept. 20, 2002).

In this case, Decedent began the application process on September 30, 2005, when he executed Part I of the application for life insurance. In that application, Decedent represented his address as 15 Kensington Court, Tenafly, New Jersey 07670. The signature page of Part I is dated September 30, 2005, in Tenafly, New Jersey. (Del Mauro Certif., at Ex. A.) Next, on October 17, 2005, Decedent underwent a paramedical examination and executed Part II to the application for life insurance, Answers to Medical Examiner. The examination and the execution of Part II took place at 1 West Ridgewood Avenue, Paramus, New Jersey. (Del Mauro Certif., at ¶ 7.) As a result of the application and in reliance on the statements and representations made therein, Allianz issued a life insurance policy to Decedent which was compliant with the specific requirements under New Jersey law. Thus, applying the grouping of

19

contacts analysis to the facts of this case, there can be no dispute that Allianz issued a policy of insurance governed under New Jersey state law and regardless of where this case is litigated, New Jersey law would apply. *See,* Fairfax Dental Ltd., 645 F. Supp. at 92 (where the court granted a transfer based in part on the fact that no choice of law issue would arise as a result of the transfer to another district court).

Finally, adherence to the first to file rule serves the convenience of any witnesses in this case. As set forth above, the convenience of witnesses is the most important factor in a court's analysis of a motion to dismiss and/or transfer under § 1404(a). Ensuring that witnesses, when possible, testify in only one forum where all parties' disputes can be litigated serves the interests of judicial economy and convenience of the parties and witnesses. Moreover, under the federal rules of civil procedure, witnesses may be served with a subpoena issued outside of the district where the action was filed but "within 100 miles of the place specified for the deposition, hearing, trial, production or inspection." FED. R. CIV. P. 45(b)(2)(C). Thus, to the extent that there are witnesses who reside within the Southern District of New York, or any part of New York City for that matter, they will certainly be subject to the subpoena power of the District of New Jersey. The Court therefore should observe the presumption that parties' disputes should be litigated in the district court where the first related action was filed and dismiss Edelbaum's Complaint without prejudice in order to allow her to assert all causes of action concerning her alleged rights under the Policy in the District of New Jersey.

## CONCLUSION

For the reasons set forth above, the Court should grant Allianz's motion to dismiss the Complaint without prejudice or, in the alternative, order that this matter be transferred to the District of New Jersey.

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for defendant, Allianz Life Insurance
Company of North America

By: _____
         Steven P. Del Mauro, Esq.

Dated:  May **20**, 2008

1079576_3

MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Defendant, Allianz Life Insurance Company of North America

By: _____
     Steven P. Del Mauro, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMA CANDICE EDELBAUM,     : <br>                    : <br>       Plaintiff,       : <br>                    : <br> vs.                    : <br>                    : <br> ALLIANZ LIFE INSURANCE    : <br> COMPANY OF NORTH AMERICA   : <br>                    : <br>       Defendant.      : <br>                    : | **CIVIL ACTION NO. 08-cv-02505** |

## CIVIL ACTION – ORDER

**THIS MATTER** having been opened to the Court upon the application of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant, Allianz Life Insurance Company of North America ("Allianz"), for an order dismissing plaintiff Norma Candice Edelbaum's ("Edelbaum") Complaint, without prejudice, or, in the alternative, transferring this matter to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), and upon notice to, The Law Office of David A. Zelman, Esq., attorneys for plaintiff, Edelbaum and the Court having reviewed and considered all moving and opposing papers, having heard argument of counsel, and finding good cause existing for the entry of the within order;

IT IS on this _____ day of _____, 2008;

ORDERED that Edelbaum's Complaint against Allianz be, and hereby is, dismissed without prejudice in order for Edelbaum to assert her claims against Allianz in the action pending in the District of New Jersey, Civil Action No. 08-cv-00668, entitled "Allianz Life Insurance Company of North America v. The Estate of Austin Bleich, and Candice Edelbaum Bleich, " or in the alternative

ORDERED that Edelbaum's complaint be, and hereby is, transferred to the United States District Court for the District of New Jersey for further proceedings.

_____
George P. Daniels, U.S.D.J.

Date:

1083573_1 DOC

**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Defendant, Allianz Life Insurance Company of North America

By: _____
        Steven P. Del Mauro, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NORMA CANDICE EDELBAUM, :<br><br>Plaintiff, :<br><br>vs. :<br><br>**ALLIANZ LIFE INSURANCE** :<br>**COMPANY OF NORTH AMERICA** :<br><br>Defendant. : | **CIVIL ACTION NO. 08-cv-02505** |

**CIVIL ACTION – CERITIFICATION OF SERVICE**

I, Kimberlee A. Sandy, am employed by the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant, Life Insurance Company of North America, in the within matter.

On May 20, 2008, I served true and accurate copies of the within notice of motion, , certification of counsel, , brief in support of motion, proposed form of order and this certification of service upon the following, in accordance with the Federal Rules of Civil Procedure and the

electronic filing rules of the United States District Court, Southern District of New York, *via*

ECF to:

David A. Zelman, Esq.
Law Office of David A. Zelman
612 Eastern Parkway
Brooklyn, New York 11225
Attorneys for Plaintiff, Norma Candice Edelbaum

Courtesy copy via regular mail to:

George B. Daniels, U.S.D.J.
United States District Court,
Southern District of New York
U.S. Courthouse, Room 630
500 Pearl Street
New York City, NY  10007-1312

     **I HEREBY CERTIFY** that all of the foregoing statements made by me are true.  I am

aware that if any of the foregoing statements made by me are willfully false, I am subject to

punishment.


                                        *Kimberlee A. Sandy*
                                        Kimberlee A. Sandy

Date:  May 20, 2008
1092832_1 DOC